**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

CloudofChange, LLC,

     Plaintiff,

             v.

NCR Corporation,

     Defendant.

No. WA:6:19-cv-00513-ADA

**JURY TRIAL DEMANDED**

**CLOUDOFCHANGE'S OPENING CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... iii

I.       INTRODUCTION ........................................................................................................ 1

   A.   The '640 Patent ...................................................................................................... 3

   B.   The '012 Patent ...................................................................................................... 3

II.      DISPUTED TERMS ..................................................................................................... 4

III.     LEGAL STANDARD .................................................................................................. 5

IV.      ARGUMENT ............................................................................................................... 8

   A.   "web-based point of sale (POS) builder system" .................................................. 8

   B.   "point of sale terminals" ...................................................................................... 10

   C.   "POS screens" ...................................................................................................... 12

   D.   "a web server" ...................................................................................................... 14

   E.   "PC workstation(s)" ............................................................................................. 16

   F.   "point of sale builder software" .......................................................................... 17

   G.   "to build or edit said POS terminals in real time" ............................................. 19

   H.   "web servers are provided as a vendor subscription service" ............................ 21

   I.   "web server software" .......................................................................................... 23

   J.   "vendor's remote servers" ................................................................................... 24

   K.   "generated by said POS builder software" ......................................................... 25

   L.   "POS builder interface" ....................................................................................... 26

   M.   "configured to be utilized to access said POS builder software for programmatically creating or modifying said one or more POS terminals in real time" ................................ 27

   N.   "said web servers are" .......................................................................................... 29

V.       CONCLUSION .......................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Arctic Cat Inc. v. GEP Power Prods., Inc.*, 919 F.3d 1320 (Fed. Cir. 2019) .............................7, 8

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002).........................................5

*Core Wireless Licensing S.A.R.L. v. LG Elecs. Inc.*, 2015 U.S. Dist. LEXIS 149693
    (E.D. Tex. Nov. 4, 2015) ...........................................................................................13, 15, 23

*CSP Techs., Inc. v. Süd-Chemie AG*, 2013 U.S. Dist. LEXIS 77441
    (S.D. Ind. Jun. 3, 2013)...........................................................................................................7, 9

*Duncan Parking Technologies, Inc. v. IPS Group, Inc.*, 914 F.3d 1347 (Fed. Cir. 2019) .............5

*Encap LLC v. Oldcastle Retail, Inc.*, 2012 U.S. Dist. LEXIS 84472
    (E.D. Wisc. Jun. 19, 2012)..................................................................................................22, 26

*Energizer Holdings Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366 (Fed. Cir. 2006) .......................30

*Good Tech. Corp. v. MobileIron, Inc.*, 2014 U.S. Dist. LEXIS 148488
    (N.D. Cal. Oct. 13, 2014) ........................................................................................ 8-9, 14, 23

*Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379 (Fed. Cir. 2008) ..................... 5-6

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111
    (Fed. Cir. 2004)...........................................................................................................................6

*Kroy IP Holdings, LLC v. Safeway, Inc.*, 2014 U.S. Dist. LEXIS 75729
    (E.D. Tex. Jun. 4, 2014)...............................................................8, 15, 17, 20, 24, 25

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004)...........................................6

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) .............................................5, 6, 8

*Marrin v. Griffin*, 599 F.3d 1290 (Fed. Cir. 2010) ......................................................................7

*Novo Industries, L.P. v. Micro Molds Corp.*, 350 F.3d 1348 (Fed. Cir. 2003)............................30

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ..................................................... *passim*

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296 (Fed. Cir. 2011)..................6

*Sol IP, LLC v. AT&T Mobility LLC*, 2019 U.S. Dist. LEXIS 216156
    (E.D. Tex. Dec. 17, 2019)...........................................................................................................7

*Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356 (Fed. Cir. 2015) ........................6

*Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002)...........................................6

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318 (2015) .......................................................5

*Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012).................... *passim*

*Trover Group, Inc., v. Dedicated Micros USA*, 2015 U.S. Dist. LEXIS 33876
(E.D. Tex. Mar. 19, 2015) .........................................................................................29

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) .......................................5, 6

**Other Authorities**                                                    **Page(s)**

U.S. Patent No. 9,400,640 ...................................................................................... *passim*

U.S. Patent No. 10,083,012 ...................................................................................... *passim*

U.S. Patent No. 5,920,312 .................................................................................................18

Manual for Patent Examining Procedure § 2173.05(e) ..............................................30

iv

Plaintiff CloudofChange, LLC files this Opening Claim Construction Brief in support of its proposed constructions for Claims 1-6 and 8-14 of U.S. Patent No. 9,400,640 (the "'640 Patent") and Claims 1-4 and 6-13 of U.S. Patent No. 10,083,012 (the "'012 Patent").

## I.    INTRODUCTION

Frustrated with point of sale systems that required manually coding front-of-screen information and that were difficult and expensive to implement and to revise as menu items or product offerings changed, Wayne Baratta and Quentin Olson invented and developed novel, more efficient, and more user-friendly, web-based point of sale technologies and systems, that were easily implemented and revised by customers without the necessity of computer programmers.  Mr. Baratta has decades of experience as a retail-store owner, and Mr. Olson has significant experience as a computer programmer and industry experience in deploying point of sale systems.  Mr. Baratta and Mr. Olson subsequently assigned their inventions to a company that they formed called CloudofChange, LLC.  CloudofChange's privately-held parent corporation Interegister Inc. is an operating entity that built, marketed, and sold such cloud-enabled, web-based systems.

This case involves Mr. Baratta and Mr. Olson's technology for systems "for online, web-based point of sale (POS) building and configuration, which can assist non-expert business operators in building, editing and testing a point of sale system to manage their businesses." Ex. A, '640 Patent, at Abstract.  An example of a point of sale touch screen in a pretzel store may include touch keys for pretzels and for drinks, with secondary screens displaying specific product keys for ordering different types of pretzels, drinks, and pretzel toppings.  *See* Ex. A at 2:35-42, Fig. 1.  Historically, "practice in the field of assembling point of sale systems includes manually coding front-of-screen information … by a business expert with the help of a programmer or data

expert." *Id*. at 1:20-26.  Further, since POS screen changes are difficult, POS systems assembled manually are prone to mistakes and time-consuming.  *See id*. at 1:33-35.  As such, prior to the Plaintiff's inventions, "store owners tend[ed] to retain older, inaccurate, out-of-date POS screens in order to avoid the POS screen editing process." *Id*. at 1:35-38.

Inventors Wayne Baratta and Quentin Olson developed systems "for building a point of sale (POS) system to manage business operations … from a single branch to a large chain of stores." *Id*. at 1:11-14.  These inventions relate "to an online, web-based point of sale builder method, which can assist non-expert business operators in assembling a point of sale system to manage their businesses." *Id*. at 1:15-18.  These inventions are described and claimed in the '640 Patent, which was filed on February 5, 2008, and its continuation, the '012 Patent.  These inventions solve problems in the prior art and reduce the need for manually coding POS systems with the help of a programmer or data expert.  *See*, *e.g.*, *id.* at 1:20-40.  The web-based point of sale (POS) builder system, as described in the common specification of the '640 and '012 Patents, provides for a back-office which supports numerous point of sale terminals:



'640 Patent, Fig. 3.  The '640 and '012 Patents further illustrate a sample screen builder panel before the screen building process begins in Fig. 4a and a sample screen builder panel after the screen building process is under way in Fig. 4b.





This technology enables a store operator, who does not have to be technically trained, to edit and test the store's screens.  Ex. A at 2:66-67.

### A.    The '640 Patent

Although the '640 and '012 Patents share a common specification, their claims focus on different embodiments.  The '640 Patent claims a web-based point of sale (POS) builder system, involving POS screens, a vendor subscription service, and software from vendor's remote servers, over the Internet, as follows:

> 1.  A web-based point of sale (POS) builder system comprising:
> one or more point of sale terminals, that display ***POS screens***,
> an internet connection from said one or more point of sale terminals to a web server,
> one or more local or remote PC workstations, and
> point of sale builder software that runs on said web server, wherein said local or remote workstations are utilized to build or edit said POS terminals in real time, from anywhere in the world and over the worldwide web,
> wherein said web servers are provided as a ***vendor subscription service*** wherein web server software resides and is hosted on said vendor's remote servers and wherein subscriber company's POS terminals access and repeatedly interact with said web server ***software from said vendor's remote servers***, in order to perform the subscriber's desired terminal function, over a network, wherein the network comprises ***the Internet***.

Ex. A at Claim 1 (emphasis added).

### B.    The '012 Patent

The '012 Patent claims a web-based point of sale (POS) builder system, involving POS

3

transactions and corresponding transaction data, over a communications network, as follows:

1. A web-based point of sale (POS) builder system comprising:
   a web server including POS builder software installed thereon;
   one or more POS terminals generated by said POS builder software and said one or more POS terminals configured to be accessible at one or more terminal devices, said POS terminals configured to accept POS transactions and collect corresponding transaction data; and
   a POS builder interface configured to be accessible via network communication with said web server *over a communications network*;
   wherein said POS builder interface is configured to be utilized to access said POS builder software for programmatically creating or modifying said one or more POS terminals in real time *over the communications network*, wherein said POS builder software is configured to interact with said one or more POS terminals over the communications network in order for the web-based point of sale (POS) builder system to perform functions in accordance with instructions sent from the POS builder interface;
   wherein said ***POS transactions and corresponding transaction data*** from said one or more POS terminals are configured to be transmitted to said web server via the communications network; and
   wherein each POS transaction is correlated with corresponding transaction data occurring at said one or more POS terminals.

Ex. B at Claim 1 (emphasis added).

## II.    DISPUTED TERMS

NCR requests that the Court construe 13 terms in the '640 and '012 Patents, as follows:

1. "web-based point of sale (POS) builder system"
2. "point of sale terminals"
3. "POS screens"
4. "a web server"
5. "PC workstation(s)"
6. "point of sale builder software"
7. "to build or edit said POS terminals in real time"
8. "web servers are provided as a vendor subscription service"
9. "web server software"
10. "vendor's remote servers"
11. "generated by said POS builder software"
12. "POS builder interface"
13. "configured to be utilized to access said POS builder software for programmatically creating or modifying said one or more POS terminals in real time"

CloudofChange contends that the 13 terms above are to be accorded their plain and ordinary meaning. Additionally, CloudofChange requests that the Court construe 1 term in the '640 Patent, specifically: "said web servers are."

## III.     LEGAL STANDARD

The ultimate construction of claim language is a question of law reviewed *de novo*, based upon underlying factual determinations reviewed for clear error. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 325-328 (2015).

"[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). "The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc)). "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Id.* (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1580 (Fed. Cir. 1996)); *see also Duncan Parking Technologies, Inc. v. IPS Group, Inc.*, 914 F.3d 1347, 1364 (Fed. Cir. 2019).

"To act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning." *Thorner*, 669 F.3d at 1365 (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)). "It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments, the patentee must 'clearly express an intent' to redefine the term." *Id.*

(quoting *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1381 (Fed. Cir. 2008)).

The standard for disavowal of claim scope is similarly exacting. *Thorner*, 669 F.3d at 1366. "The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Id.* at 1366 (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). "To constitute disclaimer, there must be a clear and unmistakable disclaimer." *Id.* at 1366-67.

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips*, 415 F.3d at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). If claim language is plain on its face, other evidence plays a more limited role, because "the proper construction of any claim language must, among other things, 'stay [] true to the claim language.'" *Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1361 (Fed. Cir. 2015) (quoting *Phillips*, 415 F.3d at 1316). "For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d 1314-15 (citing *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004)).

The claims "'must be read in view of the specification, of which they are a part.'" *Phillips*, 415 F.3d at 1315 (quoting *Markman*, 52 F.3d at 979). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics*, 90 F.3d at 1582).

However, "[t]here is a fine line between construing the claims in light of the specification and improperly importing a limitation from the specification into the claims." *Retractable*

*Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011); *Phillips*, 415 F.3d at 1323 ("[A]void importing limitations from the specification into the claims."). Without clear, deliberate, and precise words in the specification, to construe a claim term by reference to the specification would impermissibly import limitations from the specification into the claims. *CSP Techs., Inc. v. Süd-Chemie AG*, 2013 U.S. Dist. LEXIS 77441 (S.D. Ind. Jun. 3, 2013) (finding no lexicographic definition, although the specification uses the terms "as used herein" and "means").

The prosecution history also plays an important role in claim interpretation, and "[l]ike the specification, the prosecution history provides evidence of how the [United States Patent and Trademark Office] and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. "The prosecution history, … part of the 'intrinsic evidence,' consists of the complete record of the proceedings before the [United States Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Id.* Finally, extrinsic evidence may be consulted, but is generally "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* at 1317-18.

The Federal Circuit has "long ruled that a preamble is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Arctic Cat Inc. v. GEP Power Prods., Inc.*, 919 F.3d 1320, 1328 (Fed. Cir. 2019) (internal quotations and citations omitted). "This principle has sometimes been characterized as 'the presumption against reading a statement of purpose in the preamble as a claim limitation.'" *Sol IP, LLC v. AT&T Mobility LLC*, 2019 U.S. Dist. LEXIS 216156, *21-22 (E.D. Tex. Dec. 17, 2019) (quoting *Marrin v. Griffin*, 599 F.3d 1290, 1294-95 (Fed. Cir. 2010)).

The purpose of claim construction includes to help the jury and to avoid ambiguity.  *Kroy IP Holdings, LLC v. Safeway, Inc.*, 2014 U.S. Dist. LEXIS 75729, at *59 (E.D. Tex. Jun. 4, 2014) ("Thus, the Court agrees with Plaintiff that Defendants' construction risks jury confusion and would introduce ambiguity into the claims."); *see also Markman*, 517 U.S. at 390 (stressing "the importance of uniformity in the treatment of a given patent").

## IV.    ARGUMENT

### A.    "web-based point of sale (POS) builder system"

| CloudofChange's Construction | NCR's Construction |
|---|---|
| Plain and ordinary meaning | "point of sale (POS) builder system that is completely built on the foundation of the web" |

#### 1.    *Plain and ordinary meaning is the proper construction*

For the '640 Patent, the term "web-based point of sale (POS) builder system" appears only in the preambles of asserted Claims 1-6 and 8-14.  Ex. A, '640 Patent, at Claims 1-6 and 8-14.  Because the preamble is not limiting, no construction is necessary for the '640 Patent.  *See Arctic Cat*, 919 F.3d at 1328.  For the '012 Patent, the claim term "web-based point of sale (POS) builder system" appears in the preambles of asserted Claims 1-4 and 6-13 and the body of Claim 1.  Ex. B, '640 Patent, at Claims 1-4 and 6-13.

The term "web-based point of sale (POS) builder system" does not need construction because, at the time of the invention, its meaning was clear to one of ordinary skill in the art, and the intrinsic evidence does not attribute a special definition or lexicography that changes the plain and ordinary meaning of the phrase.  *See Thorner*, 669 F.3d at 1365-66; *see also Phillips*, 415 F.3d at 1312-13.  Indeed, NCR repeats "point of sale (POS) builder system" in its proposed construction, conceding that those elements have a plain and ordinary meaning.  Moreover, the Northern District of California held, in the context of a different patent, that "web-based software

server" is to be construed as its "plain meaning." *Good Tech. Corp. v. MobileIron, Inc.*, 2014 U.S. Dist. LEXIS 148488 (N.D. Cal. Oct. 13, 2014).

The specification and prosecution history do not deviate from this meaning or provide another definition. *See* Ex. A at Abstract, 2:3-14 ("It is further an object of this invention to provide an online, web-based ***point of sale builder system*** and method, which can assist non-expert or expert business operators in assembling a point of sale system to manage their businesses.") (emphasis added), 5:55-58 ("There is minimal time required for the implementation and installation of the ***POS builder system***, since the POS builder setup is as basic as a home PC setup.") (emphasis added), 5:58-67.

2.    *NCR improperly imports limitations from the specification into the claims*

NCR's proposed construction improperly seeks to replace two words—"web-based"—with ten words used in the specification to describe only one of several advantages of a web-based POS builder system. *See Phillips*, 415 F.3d at 1323 ("[A]void importing limitations from the specification into the claims."). NCR relies, in part, on the specification for its proposed construction:

> The key advantages of the Web-based POS builder are ***that it is completely built on the foundation of the Web***. The POS builder is accessible anywhere in the world. It can be used by a person of any skill level. The POS builder builds, edits, and tests new POS terminals in real time.

Ex. A at Abstract (emphasis added). However, NCR's proposed construction is without clear, deliberate, and precise words in the specification redefining the term. *See CSP Techs.,* 2013 U.S. Dist. LEXIS 77441. Specifically, NCR's proposed construction—"that is completely built on the foundation of the web"—is less clear, less deliberate, and less precise than the actual claim language. In fact, the asserted claims contain a number of more precise descriptions of attributes

9

of the web-based POS builder than the single advantage proposed by NCR to define the term, including:

- "web server including POS builder software installed thereon" (Ex. B at Claim 1);

- "a POS builder interface configured to be accessible via network communication with said web server over a communications network" (Ex. B at Claim 1);

- "point of sale builder software that runs on said web server, wherein said local or remote workstations are utilized to build or edit said POS terminals in real time, from anywhere in the world and over the worldwide web" (Ex. A at Claim 1);

- "wherein use of said builder requires no special training" (Ex. A at Claim 3);

- "wherein said POS screens are viewable in real-time at remote locations anywhere in the world via personal computers with browser based web access" (Ex. A at Claim 14).

      *3.       The plain and ordinary meaning*

Although construction of the term "web-based" is not necessary, to the extent that the Court finds otherwise, it would be consistent with the claims and specification to construe "web-based" to mean "accessible over the world-wide web."  NCR's proposed construction concedes that the remaining portion of this term—"point of sale (POS) builder system"—has its plain and ordinary meaning.

Accordingly, NCR's proposed construction improperly attempts to import a limitation from the specification to the claims, the Court should, consistent with *Phillips*, adopt CloudofChange's construction of the plain and ordinary meaning for the term "web-based point of sale (POS) builder system."

**B.     "point of sale terminals"**

| CloudofChange's Construction | NCR's Construction |
|---|---|
| Plain and ordinary meaning | "a computer that includes personal computer hardware and specialized software for managing sales transactions between a business and a consumer at the place of the transaction" |

1.      *Plain and ordinary meaning is the proper construction*

The term "point of sale terminals" does not need construction because, at the time of the invention, its meaning was clear to one of ordinary skill in the art, and the intrinsic evidence does not attribute a special definition or lexicography that changes the plain and ordinary meaning of the phrase.  *See Thorner*, 669 F.3d at 1365-66; *see also Phillips*, 415 F.3d at 1312-13.

The specification and prosecution history do not deviate from this meaning or provide another definition.  *See* Ex. A at Abstract, 2:9-16 ("Local or remote workstations can be utilized to build or edit said ***POS terminals*** in real time, … over the world-wide web.") (emphasis added), 3:1-4 ("The testing of said POS screens can be done iteratively by the store operator in real time while said ***POS terminals*** are simultaneously in use during store and business operation hours or after store hours.") (emphasis added), 4:16-20, 5:26-27 ("The POS builder builds, edits, and tests new ***POS terminals*** in real time.") (emphasis added), Fig. 3.

2.      *NCR improperly imports limitations from the specification into the claims*

NCR's proposed construction improperly imports limitations from the specification into the claims.  *See Phillips*, 415 F.3d at 1323 ("[A]void importing limitations from the specification into the claims.").  NCR's proposed construction improperly takes claim language from the '012 Patent, including a reference to "transactions," and combines it into the claim term "point of sale terminals" for both patents.  *See*, *e.g.*, Ex. B at Claim 1 ("wherein said POS transactions and corresponding transaction data from said one or more POS terminals are configured to be transmitted to said web server via the communications network").  Notably, the claims of the '640 Patent include "point of sale terminals" but do not include the term "transactions."  Ex. A at Claims 1-28.  Thus, NCR's proposed construction is an improper importation of the term "transactions" and should be disregarded.

11

3.    *NCR improperly imports limitations from outside of the specification*

NCR's proposed construction improperly imports limitations from outside of the specification as well.  While the specification does not use the word "consumer" or a "place of the transaction," NCR's proposed construction requires "a consumer at the place of the transaction."  *See* Ex. A, *passim*.

4.    *The plain and ordinary meaning*

Although construction of "point of sale terminals" is not necessary, to the extent that the Court finds otherwise, it would be consistent with the claims and specification to construe "point of sale terminals" to mean "point of sale hardware and software."  *See* Ex. A at 3:40-41 ("Each POS includes personal computer ***hardware and software***.") (emphasis added).

Accordingly, NCR's proposed construction improperly attempts to import a limitation from the specification, the Court should, consistent with *Phillips*, adopt CloudofChange's construction of the plain and ordinary meaning for the term "point of sale terminals."

**C.    "POS screens"**

| CloudofChange's Construction | NCR's Construction |
|---|---|
| Plain and ordinary meaning | "textual and/or graphical presentations (e.g., touch screens with touch keys) displayed on the POS terminal that depict features of the subject of the sales transactions (e.g., pretzels, drinks) with corresponding hooks or references to product data" |

1.    *Plain and ordinary meaning is the proper construction*

The term "POS screens" does not need construction because, at the time of the invention, its meaning was clear to one of ordinary skill in the art, and the intrinsic evidence does not attribute a special definition or lexicography that changes the plain and ordinary meaning of the phrase.  *See Thorner*, 669 F.3d at 1365-66; *see also Phillips*, 415 F.3d at 1312-13.

12

The specification and prosecution history do not deviate from this meaning or provide another definition. *See* Ex. A at 2:35-36 ("FIG. 1 shows a typical point of sale (*POS*) touch *screen* for, as an example only, a pretzel store.") (emphasis added), 2:36-52, 3:1-4 ("The testing of said *POS screens* can be done iteratively by the store operator in real time while said POS terminals are simultaneously in use during store and business operation hours or after store hours.") (emphasis added), 3:24-29, Figs. 1-2, 4a, 4b.

### 2.    *NCR improperly imports limitations from the specification into the claims*

The claims of the '012 Patent do not include the term "POS screens." Ex. B at Claims. Asserted Claims 1, 4, 8-10, and 14 of the '640 Patent do include "POS screens," but do not include the term "transactions," as discussed above. Ex. A at Claims. NCR's proposed construction is unnecessarily wordy and complex and improperly imports limitations from the specification into the claims, specifically with respect to the phrase "terminal that depict features of the subject of the sales transactions (e.g., pretzels, drinks) with corresponding hooks or references to product data." *See Phillips*, 415 F.3d at 1323 ("[A]void importing limitations from the specification into the claims."); *see also Core Wireless Licensing S.A.R.L. v. LG Elecs. Inc.*, 2015 U.S. Dist. LEXIS 149693, at *22 (E.D. Tex. Nov. 4, 2015) (stating that "[i]nclusion of these examples in the construction runs the risk of jury or expert confusion by implying the terms are limited to such examples.").

### 3.    *The plain and ordinary meaning*

Although construction of "POS screens" is not necessary, to the extent that the Court finds otherwise, it would be consistent with the claims and specification to construe "POS screens" to mean "visual display on a terminal of selection keys or buttons." *See* Ex. A at 2:63-66 ("With input from the store operator, the POS builder can specify and display the number,

shape and arrangement of selection keys or buttons on said **POS screens**.") (emphasis added).

Accordingly, NCR's proposed construction improperly attempts to import a limitation from the specification into the claims, the Court should, consistent with *Phillips*, adopt CloudofChange's construction of the plain and ordinary meaning for the term "POS screens."

**D.    "a web server"**

| CloudofChange's Construction | NCR's Construction |
|---|---|
| Plain and ordinary meaning | "a computer that delivers (serves up) web pages" |

*1.    Plain and ordinary meaning is the proper construction*

The term "a web server" does not need construction because, at the time of the invention, its meaning was clear to one of ordinary skill in the art, and the intrinsic evidence does not attribute a special definition or lexicography that changes the plain and ordinary meaning of the phrase. *See Thorner*, 669 F.3d at 1365-66; *see also Phillips*, 415 F.3d at 1312-13. Indeed, the Northern District of California held, in the context of a different patent, that "web-based software server" is to be construed as its "plain meaning." *Good Tech. Corp.,* 2014 U.S. Dist. LEXIS 148488.

The specification and prosecution history do not deviate from this meaning or provide another definition. *See* Ex. A at 2:9-16, 2:49-52 ("In this invention, this product data and the touch key structure is stored in relational databases in the back office which is stored on the **web servers 36** shown in FIG. **3**.") (emphasis added), 4:7-9 ("As transactions are created at a POS a log entry for the newest transaction is also created, this log entry is used to flag if the transaction has been uploaded to the **web server**.") (emphasis added), 4:16-20 ("The POS terminals communicate via HTTP protocol (hypertext transfer protocol) **35** with Back-office BO software, which is implemented on **web servers 36**, which can be located anywhere in the world.") (emphasis added), 5:43-45 ("Another advantage of this system is the use of standard PC and web

architecture which offers both full-scalability without degrading system performance."), Fig. 3.

        2.     *NCR improperly imports limitations from the specification into the claims*

While the claims of the '640 and '012 Patents do not refer to "web pages," the common specification has one reference to a "Web page." Ex. A at Claims; Ex. B at Claims; Ex. A at 4:56-57 ("The Begin POS Build block 51 is entered when the Builder Program is initiated 50 from a Web page action."). Thus, NCR's proposed construction improperly imports this limitation from the common specification into the claims. *See Phillips*, 415 F.3d at 1323 ("[A]void importing limitations from the specification into the claims.").

NCR's proposed construction should be disregarded as it may confuse the jury by placing an emphasis on "web pages," a term with one occurrence in the specification, rather than on the claim language itself. *See Core Wireless Licensing*, 2015 U.S. Dist. LEXIS 149693, at *22 (stating that "[i]nclusion of these examples in the construction runs the risk of jury or expert confusion by implying the terms are limited to such examples."); *Kroy IP,* 2014 U.S. Dist. LEXIS 75729, at *59 (agreeing "that Defendants' construction risks jury confusion and would introduce ambiguity into the claims."). Accordingly, NCR's proposed construction should be rejected.

        3.     *The plain and ordinary meaning*

Although construction of "a web server" is not necessary, to the extent that the Court finds otherwise, it would be consistent with the claims and specification to construe "a web server" to mean "computer that delivers web content." *See* Ex. A at 2:9-16, 2:49-52, 4:7-9, 4:16-20 5:43-45, Fig. 3; *see also, e.g.*, Ex. C (extrinsic evidence).

Accordingly, NCR's proposed construction improperly attempts to import a limitation from the specification into the claims, the Court should, consistent with *Phillips*, adopt

CloudofChange's construction of the plain and ordinary meaning for the term "a web server."

E.    "PC workstation(s)"

| CloudofChange's Construction | NCR's Construction |
|---|---|
| Plain and ordinary meaning | "a workstation implemented with personal computer architecture including a keyboard, monitor and data store drives" |

1.    *Plain and ordinary meaning is the proper construction*

The claims of the '012 Patent do not include the term "PC workstation."  Ex. B.  Asserted Claim 1 of the '640 Patent includes "PC workstations."  Ex. A at Claim 1; *see also* Ex. A at 2:9-16.  The term "PC workstation(s)" does not need construction because, at the time of the invention, its meaning was clear to one of ordinary skill in the art, and the intrinsic evidence does not attribute a special definition or lexicography that changes the plain and ordinary meaning of the phrase.  *See Thorner*, 669 F.3d at 1365-66; *see also Phillips*, 415 F.3d at 1312-13.  Indeed, NCR's proposal uses the term "workstation" to define the claim term "workstation(s)."

2.    *NCR improperly imports limitations from the specification into the claims*

NCR's proposed construction is unnecessarily wordy, complicated, and seeks to erroneously require separate keyboards, monitors and "data store drives" not required by the claims of the asserted patents.  NCR's proposed construction also improperly imports limitations from the specification into the claims, specifically with respect to "personal computer architecture."  *See Phillips*, 415 F.3d at 1323 ("[A]void importing limitations from the specification into the claims.").  In particular, NCR's proposed construction imports "personal computer architecture" from dependent Claim 2 of the '640 Patent or from the specification into independent Claim 1.  *See* Ex. A at Claim 2 ("wherein said POS terminals are implemented with personal computer (PC) architecture"), Claim 16; *see also* Ex. A at 5:43-45 ("Another advantage

16

of this system is the use of standard PC and web architecture which offers both full-scalability without degrading system performance.").

### 3.    *NCR's proposed construction should be rejected*

CloudofChange disputes that a "PC workstation" as used in the '640 Patent requires specifically "a keyboard, monitor and data store drives" as opposed to other forms of input/output device and data storage.   Furthermore, NCR's proposed construction raises additional issues—*e.g.*, whether a virtual keyboard is a "keyboard," whether a laptop screen is a "monitor," whether embedded memories are "drives," *etc.*—which may introduce ambiguity. *See Kroy IP,* 2014 U.S. Dist. LEXIS 75729, at *59 (agreeing "that Defendants' construction risks jury confusion and would introduce ambiguity into the claims.").   NCR's proposed construction is litigation-based and should be rejected.

### 4.    *The plain and ordinary meaning*

Although construction of "PC workstation(s)" is not necessary, to the extent that the Court finds otherwise, it would be consistent with the claims and specification to construe "PC workstation(s)" to mean "an intelligent terminal or personal computer usually connected to a computer network."  *See* Ex. D ("an intelligent terminal or personal computer usually connected to a computer network"); *see also* Ex. A at 2:9-16.

### F.    **"point of sale builder software"**

| CloudofChange's Construction | NCR's Construction |
|---|---|
| Plain and ordinary meaning | "software that programmatically assembles POS screens, including the number, shape and arrangement of buttons on such screens, and defines the relationship of such screens and buttons to each other and to corresponding databases" |

### 1.    *Plain and ordinary meaning is the proper construction*

The term "point of sale builder software" does not need construction because, at the time

of the invention, its meaning was clear to one of ordinary skill in the art, and the intrinsic evidence does not attribute a special definition or lexicography that changes the plain and ordinary meaning of the phrase. *See Thorner*, 669 F.3d at 1365-66; *see also Phillips*, 415 F.3d at 1312-13. Indeed, the specification and prosecution history do not deviate from this meaning or provide another definition. *See* Ex. A at Abstract, 2:9-16, 4:56-57, 5:23-29, Fig. 5.

### 2. *NCR improperly imports limitations from the specification into the claims*

While the term "point of sale builder software" appears in Claim 1 of both patents, NCR's proposed construction includes the term "POS screens," which does not appear in the claims of the '012 Patent. Ex. A at Claim 1; Ex. B at Claims. Moreover, NCR's proposed construction includes the term "database," which appears only in dependent claims. Ex. A at Claims 13; Ex. B at Claims 13. In addition, the proposed term "assembles" does not appear in the claims of either patent. Ex. A at Claims; Ex. B at Claims. Thus, NCR's proposed construction improperly imports limitations from the specification into the claims of both patents. *See Phillips*, 415 F.3d at 1323 ("[A]void importing limitations from the specification into the claims."). Notably, NCR's proposed construction improperly seeks to replace five words—"point of sale builder software"—with thirty-three words.

### 3. *The intrinsic and extrinsic evidence bolster the plain meaning*

Additional intrinsic evidence confirms that "builder" is a term of art, understood by a person having skill in the art. *See* Ex. A at 1:51-52 ("U.S. Pat. No. 7,051,091 B1 (Cohen et al.) discloses a configuration ***builder*** …") (emphasis added).

While not necessary for the construction of "point of sale builder software," the extrinsic evidence also confirms that "builder" is a term of art, understood by a person having skill in the art. *See, e.g.*, Ex. E, U.S. Patent No. 5,920,312 to Wagner, assigned to NCR, at Abstract ("A

*builder*, tester, and runtime integration method for Point-Of-Sale ….” and “much of the code for the *builder* program and tester program is general-purpose.”) (emphasis added); *see also* Ex. F at [0073] (“When the merchant specifies his desired options, he may click ‘generate code,’ whereby the website *builder* will generate html code and instructions on where to paste the code.”) (emphasis added).

4.    *The plain and ordinary meaning*

Although construction of “point of sale builder software” is not necessary, to the extent that the Court finds otherwise, it would be consistent with the claims and specification to construe “point of sale builder software” to mean “software that builds or generates the POS terminals.”

Accordingly, NCR’s proposed construction improperly attempts to import a limitation from the specification into the claims, the Court should, consistent with *Phillips*, adopt CloudofChange’s construction of the plain and ordinary meaning for the term “point of sale builder software.”

G.    **“to build or edit said POS terminals in real time”**

| CloudofChange’s Construction | NCR’s Construction |
|---|---|
| Plain and ordinary meaning | “to implement build or edit instructions at said POS terminals immediately as they are made at the workstations and without delay” |

1.    *Plain and ordinary meaning is the proper construction*

The term “to build or edit said POS terminals in real time” does not need construction because, at the time of the invention, its meaning was clear to one of ordinary skill in the art, and the intrinsic evidence does not attribute a special definition or lexicography that changes the plain and ordinary meaning of the phrase. *See Thorner*, 669 F.3d at 1365-66; *see also Phillips*, 415 F.3d at 1312-13.

The specification and prosecution history do not deviate from this meaning or provide another definition. *See* Ex. A at Abstract ("The POS builder builds, edits, and tests new POS terminals in real time."), 2:9-16, 2:61-3:1 ("The store operator, who does not have to be technically trained, will be able to edit and test his screens until he is satisfied with the end results."), 3:24-29, 5:23-27, Fig. 5.

    2.    *NCR improperly imports limitations from the specification into the claims*

While the phrase "to build or edit said POS terminals in real time" appears in Claim 1 of the '640 Patent and not in the claims of the '012 Patent, NCR's proposed construction for the '640 Patent includes the term "instructions" which appears in the claims of '012 Patent but not in the claims of the '640 Patent. Ex. A at Claims; Ex. B at Claims. Moreover, NCR's proposed construction includes the term "immediately," which appears only once in the common specification. Ex. A at 5:35-36. Thus, NCR's proposed construction improperly imports limitations from the specification into the claims. *See Phillips*, 415 F.3d at 1323 ("[A]void importing limitations from the specification into the claims.").

    3.    *NCR improperly imports limitations from outside of the specification*

NCR's proposed construction improperly imports limitations from outside of the specification as well. While the specification does not use the words "without delay" or "delay," NCR's proposed construction improperly requires "without delay." In addition, NCR's proposed addition of the terms "without delay" injects ambiguity into the claim, which may be for the litigation purpose of allowing NCR to argue about the amount of time that does or does not constitute "delay." *See Kroy IP*, 2014 U.S. Dist. LEXIS 75729, at *59 (agreeing "that Defendants' construction risks jury confusion and would introduce ambiguity into the claims.").

4. *The plain and ordinary meaning*

The specification is clear in that "in real time" means "within minutes." *See* Ex. A at 3:27-29 ("In addition, the store operator will be able to edit, change and test the screens within minutes in real time.").  NCR's proposed construction suggests that the jury will understand "build or edit" (at least as an adjective).  Because the claim terms "POS terminals" and "PC workstation(s)" are separately addressed, no further construction is necessary.

Although construction of "to build or edit said POS terminals in real time" is not necessary, to the extent that the Court finds otherwise, it would be consistent with the claims and specification to construe "to build or edit said POS terminals in real time" to mean "to build or edit said POS terminals within minutes."

Accordingly, NCR's proposed construction improperly attempts to import a limitation from the specification and outside of the specification into the claims, the Court should, consistent with *Phillips*, adopt CloudofChange's construction of the plain and ordinary meaning for the term "to build or edit said POS terminals in real time."

**H.    "web servers are provided as a vendor subscription service"**

| CloudofChange's Construction | NCR's Construction |
|---|---|
| Plain and ordinary meaning | "each web server is individually provided by a vendor to a subscriber as a subscription service" |

1. *Plain and ordinary meaning is the proper construction*

The term "web servers are provided as a vendor subscription service" does not need construction because, at the time of the invention, the meaning of this phrase was clear to one of ordinary skill in the art, and the intrinsic evidence does not attribute a special definition or lexicography that changes the plain and ordinary meaning of the phrase.  *See Thorner*, 669 F.3d at 1365-66; *see also Phillips*, 415 F.3d at 1312-13.

21

2.    *NCR improperly imports limitations from the specification into the claims*

The phrase "web servers are provided as a vendor subscription service" appears in Claim 1 of the '640 Patent and not in the claims of the '012 Patent.  Ex. A at Claims; Ex. B at Claims.  NCR's proposed construction includes the term "individually," which appears in the common specification only once with respect to a POS.  Ex. A at 4:37-39 ("A further element of security is that each BO client (*individual POS*, store or multi-store owner) gets their own instance of a database.") (emphasis added).  Notably, this feature is not claimed in either patent.  Moreover, NCR's proposed construction adds the term "each" to modify "web server."  Thus, NCR's proposed construction improperly imports these limitations from the specification into the claims.  *See Phillips*, 415 F.3d at 1323 ("[A]void importing limitations from the specification into the claims.").

3.    *No construction is necessary*

Besides improperly importing limitations, NCR's proposed construction does no more than re-word the claim language.  *Encap LLC v. Oldcastle Retail, Inc.*, 2012 U.S. Dist. LEXIS 84472 at *22 (E.D. Wisc. Jun. 19, 2012) ("Claim construction is not intended to allow for needless substitution of more complicated language for terms easily understood by a lay jury.").  NCR's proposed construction reuses the bold language from the claim term: "each **web server** is individually **provided** by a **vendor** to a subscriber **as a subscription service**."  NCR's proposed construction adds "each" and "individually," then deletes "vendor" before "subscription service" and adds "by a **vendor** to a subscriber" after "provided."  Because NCR's proposed construction admits that the jury will understand each of these claim terms, no further construction is necessary.  *See also* Ex. A at 5:58-63.

## I.      "web server software"

| CloudofChange's Construction | NCR's Construction |
|---|---|
| Plain and ordinary meaning | "software on a computer that delivers (serves up) web pages" |

### 1.      Plain and ordinary meaning is the proper construction

The term "web server software" does not need construction because, at the time of the invention, its meaning was clear to one of ordinary skill in the art, and the intrinsic evidence does not attribute a special definition or lexicography that changes the plain and ordinary meaning of the phrase.  *See Thorner*, 669 F.3d at 1365-66; *see also Phillips*, 415 F.3d at 1312-13.  Indeed, the Northern District of California held, in the context of a different patent, that "web-based software server" is to be construed as its "plain meaning."  *Good Tech. Corp.,* 2014 U.S. Dist. LEXIS 148488.

The specification and prosecution history do not deviate from this meaning or provide another definition.  *See* Ex. A at 2:9-16.

### 2.      NCR improperly imports limitations from the specification into the claims

While the claims of the '640 and '012 Patents do not refer to "web pages," the common specification has one reference to a "Web page."  Ex. A at Claims; Ex. B at Claims; Ex. A at 4:56-57 ("The Begin POS Build block 51 is entered when the Builder Program is initiated 50 from a Web page action.").  Thus, NCR's proposed construction improperly imports this limitation from the specification into the claims of the '640 Patent.  *See Phillips*, 415 F.3d at 1323 ("[A]void importing limitations from the specification into the claims.").

NCR's proposed construction should be disregarded as it may confuse the jury by placing an emphasis on "web pages," a term with one occurrence in the specification, rather than the claim language itself.  *See Core Wireless Licensing*, 2015 U.S. Dist. LEXIS 149693, at *22 (stating that "[i]nclusion of these examples in the construction runs the risk of jury or expert

confusion by implying the terms are limited to such examples."); *Kroy IP,* 2014 U.S. Dist. LEXIS 75729, at \*59 (agreeing "that Defendants' construction risks jury confusion and would introduce ambiguity into the claims.").

>    3.    *The plain and ordinary meaning*

Although construction of "web server software" is not necessary, to the extent that the Court finds otherwise, it would be consistent with the claims and specification to construe "web server software" to mean "software on a computer that delivers web content."  *See* Ex. A at 2:9-16, 4:16-20; *see also, e.g.*, Ex. C (extrinsic evidence).

Accordingly, NCR's proposal improperly attempts to import a limitation from the specification into the claims, the Court should, consistent with *Phillips*, adopt CloudofChange's construction of the plain and ordinary meaning for the term "web server software."

**J.    "vendor's remote servers"**

| CloudofChange's Construction | NCR's Construction |
|---|---|
| Plain and ordinary meaning | "servers owned by the vendor that are remote from the one or more POS terminals" |

>    1.    *Plain and ordinary meaning is the proper construction*

The term "vendor's remote servers" does not need construction because, at the time of the invention, its meaning was clear to one of ordinary skill in the art, and the intrinsic evidence does not attribute a special definition or lexicography that changes the plain and ordinary meaning of the phrase.  *See Thorner*, 669 F.3d at 1365-66; *see also Phillips*, 415 F.3d at 1312-13.

>    2.    *NCR improperly imports limitations from outside of the specification*

While the claims and specification do not use the word "owned," NCR's proposed construction requires servers "owned by the vendor."  Ex. A, *passim*; Ex. B at Claims.  In

particular, CloudofChange disputes that a "vendor's remote servers" as used in the '640 Patent requires ownership as opposed to other forms of control or association. Indeed, NCR's proposed construction raises additional issues, *e.g.*, whether a long-term lease or license to a vendor satisfies "owned by the vendor," *etc*. Accordingly, NCR's proposed construction should be rejected. *See Kroy IP,* 2014 U.S. Dist. LEXIS 75729, at *59 (agreeing "that Defendants' construction risks jury confusion and would introduce ambiguity into the claims.").

### 3. The plain and ordinary meaning

Although construction of "vendor's remote servers" is not necessary, to the extent that the Court finds otherwise, it would be consistent with the claims and specification to construe "remote" to mean "remote from the one or more POS terminals." *See also* Ex. A at 5:58-63.

Accordingly, NCR's proposal improperly attempts to import a limitation from the specification into the claims, the Court should, consistent with *Phillips*, adopt CloudofChange's construction of the plain and ordinary meaning for the term "vendor's remote servers."

### K. "generated by said POS builder software"

| CloudofChange's Construction | NCR's Construction |
|---|---|
| Plain and ordinary meaning | "programmatically created by said POS builder software" |

### 1. Plain and ordinary meaning is the proper construction

The term "generated by said POS builder software" does not need construction because, at the time of the invention, its meaning was clear to one of ordinary skill in the art, and the intrinsic evidence does not attribute a special definition or lexicography that changes the plain and ordinary meaning of the phrase. *See Thorner*, 669 F.3d at 1365-66; *see also Phillips*, 415 F.3d at 1312-13.

### 2. The plain and ordinary meaning

The term "generated by said POS builder software" appears only in the claims of the '012

Patent. Ex. B at Claim 1. NCR's proposed construction reuses the bold language from the claim term: "generated **by said POS builder software**." NCR's proposed construction then replaces "generated" with "programmatically created." *Encap,* 2012 U.S. Dist. LEXIS 84472 at *22 ("Claim construction is not intended to allow for needless substitution of more complicated language for terms easily understood by a lay jury.").

Because NCR's proposed construction admits that the jury will understand "by said POS builder software," no further construction of "generated by said POS builder software" is necessary. *See* Ex. A at 2:9-16, 3:1-4, 5:26-27.

**L.    "POS builder interface"**

| CloudofChange's Construction | NCR's Construction |
|---|---|
| Plain and ordinary meaning | "an interface on one or more local or remote PC workstations" |

*1.    Plain and ordinary meaning is the proper construction*

The term "POS builder interface" does not need construction because, at the time of the invention, its meaning was clear to one of ordinary skill in the art, and the intrinsic evidence does not attribute a special definition or lexicography that changes the plain and ordinary meaning of the phrase. *See Thorner*, 669 F.3d at 1365-66; *see also Phillips*, 415 F.3d at 1312-13.

The specification and prosecution history do not deviate from this meaning or provide another definition. *See* Ex. A at 2:9-16, 4:43-44 ("FIGS. **4**a and **4**b show a typical web-based POS builder interface."), 4:44-57, 5:23-29, Figs. 4a, 4b, 5; *see also* Ex. B at Claims.

*2.    NCR improperly imports limitations from the specification into the claims*

The term "POS builder interface" appears in the '012 Patent. Ex. B at Claims 1-2, 4, 10-12. The term "one or more local or remote PC workstations" appears in the Claim 1 of the '640 Patent, but does not appear in the claims of the '012 Patent. Ex. A at Claim 1; Ex. B at Claims.

26

Thus, NCR's proposed construction improperly imports this limitation—"workstation"—from the specification into the claims. *See Phillips*, 415 F.3d at 1323 ("[A]void importing limitations from the specification into the claims.").

> 3.    *The plain and ordinary meaning*

Although construction of "POS builder interface" is not necessary, to the extent that the Court finds otherwise, it would be consistent with the claims and specification to construe "POS builder interface" to mean "an interface to the POS builder software."

Accordingly, NCR's proposal improperly attempts to import a limitation from the specification into the claims, the Court should, consistent with *Phillips*, adopt CloudofChange's construction of the plain and ordinary meaning for the term "POS builder interface."

**M.    "configured to be utilized to access said POS builder software for programmatically creating or modifying said one or more POS terminals in real time"**

| CloudofChange's Construction | NCR's Construction |
|---|---|
| Plain and ordinary meaning | "configured to be utilized to allow a workstation to access said POS builder software for programmatically creating or modifying said one or more POS terminals instantaneously" |

> 1.    *Plain and ordinary meaning is the proper construction*

The phrase "configured to be utilized to access said POS builder software for programmatically creating or modifying said one or more POS terminals in real time" does not need construction because, at the time of the invention, its meaning was clear to one of ordinary skill in the art, and the intrinsic evidence does not attribute a special definition or lexicography that changes the plain and ordinary meaning of the phrase. *See Thorner*, 669 F.3d at 1365-66; *see also Phillips*, 415 F.3d at 1312-13.

2.    *NCR improperly imports limitations from the specification into the claims*

The phrase "configured to be utilized to access said POS builder software for programmatically creating or modifying said one or more POS terminals in real time" appears in the '012 Patent.  Ex. B at Claim 1.  The term "workstation" appears in the Claim 1 of the '640 Patent, but does not appear in the claims of the '012 Patent.  Ex. A at Claim 1 ("workstations"); Ex. B at Claims.  Thus, NCR's proposed construction improperly imports this limitation— "workstation"—from the specification into the claims.  *See Phillips*, 415 F.3d at 1323 ("[A]void importing limitations from the specification into the claims.").

3.    *The plain and ordinary meaning*

NCR's proposed construction reuses the bold language from the claim term: "**configured to be utilized to access said POS builder software for programmatically creating or modifying said one or more POS terminals** in real time."  NCR's proposed construction then adds "to allow a workstation" between "utilized" and "to access."  In addition, NCR's proposed construction also replaces "in real time" with "instantaneously."  The specification is clear that "in real time" means "within minutes."  *See* Ex. A at 3:27-29 ("In addition, the store operator will be able to edit, change and test the screens within minutes in real time.").  Similar to its proposal of "without delay" in a prior construction, the meaning of NCR's proposal of "instantaneously" is subject to debate and is a litigation-based construction.

Although construction of "configured to be utilized to access said POS builder software for programmatically creating or modifying said one or more POS terminals in real time" is not necessary, to the extent that the Court finds otherwise, it would be consistent with the claims and specification to construe "configured to be utilized to access said POS builder software for programmatically creating or modifying said one or more POS terminals in real time" to mean

"configured to be utilized to access said POS builder software for programmatically creating or modifying said one or more POS terminals within minutes." *See also* Ex. A at 2:9-16, 2:61-3:1, 3:24-29 ("…the store operator will be able to edit, change and test the screens *within minutes in real time*.") (emphasis added), 4:43-53, 4:56-57, 5:23-29, Figs. 4a, 4b, 5.

Accordingly, NCR's proposal improperly attempts to import a limitation from the specification into the claims, the Court should, consistent with *Phillips*, adopt CloudofChange's construction of the plain and ordinary meaning for this term.

**N.**   **"said web servers are"**

| CloudofChange's Construction | NCR's Construction |
|---|---|
| web servers are | *See above for claim term* "web servers are provided as a vendor subscription service" |

Defendant's Preliminary Invalidity Contentions questioned the antecedent basis of the term "said web servers are" located in Claim 1 of the '640 Patent, which states:

> 1.   A web-based point of sale (POS) builder system comprising:
>       one or more point of sale terminals, that display POS screens,
>       an internet connection from said one or more point of sale terminals to ***a web server***,
>       one or more local or remote PC workstations, and
> point of sale builder software that runs on ***said web server***, wherein said local or remote workstations are utilized to build or edit said POS terminals in real time, from anywhere in the world and over the worldwide web,
>       wherein ***said web servers are*** provided as a vendor subscription service wherein web server software resides and is hosted on said vendor's remote servers and wherein subscriber company's POS terminals access and repeatedly interact with said web server software from said vendor's remote servers, in order to perform the subscriber's desired terminal function, over a network, wherein the network comprises the Internet.

Ex. A at Claim 1 (emphasis added).   Clearly, the antecedent basis of "said web servers" is implicitly "said web server," whose antecedent basis is "a web server."   Accordingly, Claim 1 does not lack an antecedent basis and is not invalid. *See Trover Group, Inc., v. Dedicated*

*Micros USA*, 2015 U.S. Dist. LEXIS 33876, at *32 (E.D. Tex. Mar. 19, 2015) (holding the claim not ambiguous when a plural term refers to a singular term) (Bryson, J.); *see also Energizer Holdings Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1371 (Fed. Cir. 2006) (holding that "an anode gel comprised of zinc as the active anode component" provided antecedent basis for "said zinc anode"); *see also* Manual for Patent Examining Procedure § 2173.05(e) (noting that "the failure to provide explicit antecedent basis for terms does not always render a claim indefinite").

Here, no certificate of correction has been issued. Because, on its face, the Claim 1 has a singular claim term as the antecedent basis for a plural claim term, and the prosecution history does not suggest a different interpretation of the claims, this Court can act to correct the error in a patent. *See Novo Industries, L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1354 (Fed. Cir. 2003).

Accordingly, we ask the Court to construe "said web servers are" as "web servers are."

## V.    CONCLUSION

For the foregoing reasons, Plaintiff CloudofChange respectfully requests that the Court adopt its proposed constructions and reject Defendant NCR's proposed constructions.

Dated:  April 13, 2020                          Respectfully submitted,

                                                By: */s/ John H. Barr, Jr.*

                                                John H. Barr, Jr.
                                                Attorney In Charge
                                                Texas Bar No. 00783605
                                                jbarr@pattersonsheridan.com

                                                John A. Yates
                                                Texas Bar No. 24056569
                                                jyates@pattersonsheridan.com

                                                B. Todd Patterson
                                                Texas Bar No. 00789537
                                                tpatterson@pattersonsheridan.com

**Patterson + Sheridan LLP**
24 Greenway Plaza, Suite 1600
Houston, Texas 77046
(Tel.): 713-623-4844
(Fax): 713-623-4846

Abelino Reyna
Texas Bar No. 24000087
areyna@pattersonsheridan.com

**Patterson + Sheridan LLP**
900 Washington Ave., Suite 503
Waco, Texas 76701
(Tel.): 254-777-5248
(Fax): 877-777-8071

*Attorneys for Plaintiff,*
*CloudofChange, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to counsel of record.

*/s/ John H. Barr, Jr.*
John H. Barr, Jr

31