IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| CLOUDOFCHANGE, LLC,<br>                *Plaintiff,*<br><br>v.<br><br>NCR CORPORATION,<br>                *Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§      CIVIL NO. 6-19-CV-00513-ADA |

## SUPPLEMENTAL CLAIM CONSTRUCTION ORDER

Before the Court are the Parties' claim construction briefs: CloudofChange CloudofChange, LLC's ("CloudofChange") opening, responsive, and reply briefs (ECF Nos. 35, 38, 39, respectively) and Defendant NCR Corporation's ("NCR") opening, responsive, and reply briefs (ECF Nos. 36, 37, 40, respectively). The Court held the Markman hearing on July 10, 2020. ECF No. 43. During that hearing, the Court informed the Parties of the constructions it intended to provide for all terms. This Order does not alter any of those constructions.

### I.   BACKGROUND

CloudofChange filed this lawsuit on August 30, 2019, alleging that NCR infringed U.S. Patent Nos. 9,400,640 ("the '640 Patent") and 10,083,012 ("the '012 Patent") (collectively, "Asserted Patents"). The '012 Patent is a continuation of the '640 Patent and they share a common specification. CloudofChange alleges that an NCR product called NCR Silver infringes Claims 1– 6 and 8–14 of the '640 Patent and Claims 1–4 and 6–13 of the '012 Patent. *See generally*, Pl.'s Compl., ECF No. 1. The Asserted Patents are generally directed to a "web-based point of sale (POS) builder system." *Id.* at ¶ 7. Specifically, these patents disclose a system "for online, web-based point of sale (POS) building and configuration, which can assist non-expert business

operators in building, editing and testing a point of sale system to manage their businesses." ECF No. 35, Ex. A, '640 Patent at Abstract.

Historically, "practice in the field of assembling point of sale systems includes manually coding front-of-screen information . . . by a business expert with the help of a programmer or data expert." '640 Patent at 1:20–26. Further, since POS screen changes are difficult, POS systems assembled manually are time-consuming and prone to mistakes. *See id.* at 1:33-35. Before the present inventions, "store owners tend[ed] to retain older, inaccurate, out-of-date POS screens in order to avoid the POS screen editing process." *Id.* at 1:35–38. The claimed invention, however, purports to provide "an online, web-based point of sale builder system and method, which can assist non-expert or expert business operators in assembling a point of sale system to manage their business." *Id.* at 2:3–6. Thus, the claimed inventions solve problems in the prior art and reduce the need for manually coding POS systems with the help of a programmer or data expert.

Although the '640 and '012 Patents share a common specification, their claims focus on different embodiments. ECF No. 35 at 3. The '640 Patent claims a web-based point of sale (POS) builder system, involving POS screens, a vendor subscription service, and software from vendor's remote servers, *over the Internet*. *See* '640 Patent at Claim 1. The '012 Patent claims a web-based point of sale (POS) builder system, involving POS transactions and corresponding transaction data, *over a communications network*. *See* '012 Patent at Claim 1.

## II.   LEGAL PRINCIPLES

The general rule is that claim terms are given their plain-and-ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds by* 135 S. Ct. 1846, 1846 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant

community at the relevant time."). The plain and ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Philips*, 415 F.3d at 1313.

"'Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). Technical dictionaries may be helpful, but they may also provide definitions that are too broad or not indicative of how the term is used in the patent. *Id.* at 1318. Expert testimony also may be helpful, but an expert's conclusory or unsupported assertions as to the meaning of a term are not. *Id.*

The "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). To act as his/her own lexicographer, the patentee must "clearly set forth a definition of the disputed claim

3

term," and "clearly express an intent to define the term." *Id.* To disavow the full scope of a claim term, the patentee's statements in the specification or prosecution history must represent "a clear disavowal of claim scope." *Id.* at 1366. Accordingly, when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

Under the doctrine of claim differentiation, a court presumes that each claim in a patent has a different scope. *Phillips*, 415 F.3d at 1314–15. The presumption is rebutted when, for example, the "construction of an independent claim leads to a clear conclusion inconsistent with a dependent claim." *Id.* The presumption is also rebutted when there is a "contrary construction dictated by the written description or prosecution history." *Seachange Int'l., Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005). The presumption does not apply if it serves to broaden the claims beyond their meaning in light of the specification. *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1326 (Fed. Cir. 2017).

### III.   ANALYSIS

After reviewing the parties' briefing and considering oral argument, the Court determines that "point of sale terminals," "PC workstations," "point of sale builder software," "to build or edit said POS terminals in real time," "programmatically creating or modifying said one or more POS terminals in real time," "web server software," "generated by said POS builder software," "POS builder interface," and "configured to be utilized to access said POS builder software for programmatically creating or modifying said one or more POS terminals in real time" be given their plain and ordinary meaning that a person of ordinary skill in the art would ascribe to it. For all these terms, neither of the exceptions to the general rule that plain and ordinary meaning apply. *Thorner*, 669 F.3d at 1365. Furthermore, none of these terms are difficult technical terms for which

a construction would help the jury understand the meaning of the term. *Kroy IP Holdings, LLC v. Safeway, Inc.*, No. 2:12-cv-800-WCB, 2014 WL 3735222, at *2 (E.D. Tex., July 28, 2014). Therefore, the Court need not provide any additional construction.

The Court provided the parties with its preliminary constructions prior to the claim construction hearing. After receiving the Court's constructions, the parties indicated that they intended to only argue three terms.[1] Of those terms, the parties agreed to the Court's construction for "said web servers are provided as a vendor subscription service" during the hearing. Therefore, this order only addresses the remaining two terms argued during the claim construction hearing.

### A. "a web server" ('640 Patent, Claim 1 & '012 Patent, Claim 1)

| CloudofChange's Proposed Construction | NCR's Proposed Construction |
|---|---|
| Plain and ordinary meaning<br><br>To the extent the Court desires further construction, CloudofChange proposes: plain and ordinary meaning wherein plain and ordinary meaning means "a server that delivers web content consisting of information related to the point of sale builder software or the POS terminals" | "a computer that delivers (serves up) web pages" |

NCR argues that the plain and ordinary meaning proposed by CloudofChange improperly broadens the scope of the claim term. ECF No. 37 at 12. NCR seeks to define the scope through its construction "a computer that delivers (serves up) web pages." *Id.* NCR asserts that a jury may consider "content" to include non-web-based content, so NCR's construction limits the scope to web pages. *Id.* NCR cites to the specification which references a web page. ECF No. 35 at 16 (citing '640 Patent at 4:56–57). NCR also points out that the extrinsic evidence within CloudofChange's initial briefing supports NCR's construction. *Id.* The extrinsic evidence defines

---

[1] The Court heard oral argument on the following claim terms: "a web server;" "said web servers are provided as a vendor subscription service;" and "vendor's remote servers." *See* ECF No. 44.

5

web servers as "computers that deliver (serves up) Web pages." *Id.* (quoting ECF No. 35, Ex. C). Additionally, NCR provides examples within in the prior art demonstrating that web servers deliver web pages. ECF No. 40 at 2 (citing ECF No. 35, Ex. F).

CloudofChange argues that the plain and ordinary meaning suffices for this term. ECF No. 38 at 12. CloudofChange contends that a person of ordinary skill in the art would agree with its proposed plain and ordinary meaning. *Id.* CloudofChange also points out that the patentee did not provide a special definition through disavowal or lexicography, so plain and ordinary meaning should apply. *Id.* at 12–13. CloudofChange takes issue with Defendants' construction as "delivers web pages" would incorrectly narrow the claim language by inserting an unnecessary limitation. ECF No. 35 at 15. CloudofChange also notes that the specification references web page only once, so inordinate emphasis should not be placed on a single word. ECF No. 38 at 12 (citing '640 Patent at 4:56–57). CloudofChange also argues that extrinsic evidence should not be considered without a compelling reason. *Id.*

As both parties disagree about the scope of the term, the term requires construction by the Court. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present fundamental disputes regarding the scope of a claim term, it is the court's duty to resolve it."). Within the context of the patent, a web server is comprised of both hardware and software. *See* '640 Patent at 6:48–50; '012 Patent at 7:2–4 ("said web server is a standard internet web server implemented with standard web server hardware and software"). The Court also notes the patent references HTTP as the method of communication between the server and the POS terminal. *See* '640 Patent at 4:23–24; '012 Patent at 4:39–40 ("The POS . . . send[s] transaction data to the BO in the form of an HTTP post or communication."). While CloudofChange voiced concern about HTTP not encompassing certain information such as XML

6

files, the Court considers XML files to be sent via HTTP. *See* '640 Patent at 4:16–19; '012 Patent at 4:33–35 ("The POS terminals communicate via HTTP . . . with Back-office BO software, which is implemented on web servers").

The Court recognizes that the main dispute between the parties pertains to delivering web pages or content, but the Court does not find either side's construction precisely on point. In initially construing "a web server," the Court indicated it generally agreed with CloudofChange's proposed construction but was concerned with the term "content." CloudofChange provided supplemental examples demonstrating the particular types of content delivered by the server such as data and files which involve more than web pages. *See, e.g.,* '640 Patent at Cl. 1 (examples of "content" include information related to POS builder software and information related to interactions with the POS terminals). In light of the provided intrinsic evidence, the Court does not find the extrinsic evidence significant to the analysis. *See Phillips*, 415 F.3d at 1317. The Court does note that this information is used to form web pages, so the Court recognizes the necessity of including "that form web pages" to the construction. *See* ECF No. 37 at 13 (citing '640 Patent at 5:29–32; '012 Patent at 5:46–48).

Therefore, the Court construes "a web server" as "hardware and software that uses HTTP[2] (hypertext transfer protocol) to serve data or files that form web pages."

---

[2] Under the Court's construction, HTTP includes the insecure and secure versions of HTTP, *i.e*, HTTP and HTTPS.

### B. "vendor's remote servers" ('640 Patent, Cl. 1)

| CloudofChange's Proposed Construction | NCR's Proposed Construction |
|---|---|
| Plain and ordinary meaning.<br><br>Alternatively: "remote" means "remote from the one or more POS terminals" | "servers owned by the vendor that are remote from the one or more POS terminals" |

The Parties further dispute the construction of the term "vendor's remote servers" as described in Claim 1 of the '640 Patent. The crux of the dispute revolves around the level of possession the vendor must have over the remote servers. ECF No. 37 at 17–18. While CloudofChange argues that no construction is necessary and that the plain and ordinary meaning of the term is appropriate, NCR would limit the vendor's level of possession of remote servers to sole ownership, as opposed to other forms of possession such as renting or leasing. *Id.*

NCR supports its limitation of a vendor's servers to actual ownership with citations to case law and the '640 Patent itself. ECF No. 36 at 19 (citing *Multimedia Content Mgmt. LLC v. Dish Network Corp.*, No. 6:18-CV-00207-ADA, Claim Construction Order (W.D. Tex. June 17, 2019)). More specifically, NCR argues its construction is consistent with this Court's past construction of the term "a service provider network," where the Court construed the limitation to include ". . . only those network elements **operated or controlled by the service provider**." *Id.* (citing *Multimedia*, No. 6:18-CV-00207-ADA, Claim Construction Order (emphasis added)). NCR further argues that its proposed construction is consistent with the '640 Patent specification because "the specification states that the POS builder system can be advantageously provided as a service or deployed within a corporation." *Id.*

However, CloudofChange correctly points out that the alternate construction in *Multimedia* was based upon an unequivocal disclaimer made by the patentee during the prosecution of an unrelated patent. *See* No. 6:18-CV-ADA, Claim Construction Order. Here, no such disclaimer has been made or argued in this case. ECF No. 38 at 23. Even if such a disclaimer were made, the case

8

which NCR points to would still contradict their position. NCR seeks to limit Claim 1 to "servers owned by the vendor" to prevent the term from encapsulating forms of possession other than ownership. ECF No. 37 at 17–18. Meanwhile, the case and construction NCR cites did not limit the term in such a way; indeed, the alternative construction "operated or controlled by the service provider" appears to allow for forms of possession other than ownership. *See Multimedia*, No. 6:18-CV-00207-ADA, Claim Construction Order.

NCR's sparse citation to the specification similarly fails to contemplate the limitation which NCR seeks to import. ECF No. 36 at 19 (citing '640 Patent at 5:58–67 ("applications are hosted by a vendor or service provider and made available to customers over a network, typically the Internet.")). NCR fails to provide any explanation or relevant case law to support its assertion that the specification language "applications hosted by a vendor" limits the vendor's remote servers to those owned by them. *See id.* It is also relevant that the language NCR relies on—"hosted by a vendor"—is used to modify "applications," not servers. *Cf. id.* The language also contradicts NCR's position as the specification can be read to contemplate multiple forums of hosting by allowing applications to be hosted by both a "vendor or service provider." *Cf. id.* Further, the language NCR relies on for support of its position comes from a single example of "[a]nother advantage" of the invention found within the specification. '640 Patent at 5:58–67. A single unsatisfactory citation to the specification is not sufficient for the Court to import a limitation into the claim. *Phillips*, 415 F.3d at 1323. The Court is not persuaded by NCR's arguments that the language of the specification requires the limitation of servers owned by the vendor to be read into the body of the claim. Therefore, having found that the intrinsic and extrinsic evidence do not attribute a special definition through disavowal, disclaimer, or lexicography that would change the

9

meaning of the term "vendor's remote servers," the Court will give the term its plain and ordinary meaning that a person of ordinary skill in the art would ascribe to it.

## IV.   CONCLUSION

Based on the foregoing, the Court finds that "a web server" means "hardware and software that uses HTTP (hypertext transfer protocol) to serve data or files that form web pages" and "vendor's remote servers" be given its plain and ordinary meaning.

**SIGNED** this 15th day of July, 2020.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE