UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

---------------------------------------------------------------- x

| | |
|---|---|
| CloudofChange, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 6:19-CV-00513-ADA |
| | ) |
| NCR Corporation, | ) |
| | ) |
| Defendant. | ) JURY TRIAL DEMANDED |
| | ) |

---------------------------------------------------------------- x

**DEFENDANT'S MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY
OF MR. GREGORY C. CROUSE**

Charles E. Phipps
  Texas State Bar No. 00794457
  cphipps@lockelord.com
Steven F. Meyer
  Admitted *pro hac vice*
  smeyer@lockelord.com
Daniel G. Nguyen
  Texas State Bar No. 24025560
  dnguyen@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
(214) 740-8000 Telephone
(214) 740-8800 Facsimile

**ATTORNEYS FOR DEFENDANT
NCR CORPORATION**

91475204v.1

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND AND FACTS ..............................................................................2

        A.      THE ASSERTED PATENTS RELATE TO POINT OF SALE SYSTEMS ..........2

        B.      THE LEVEL OF ORDINARY SKILL IN THE ART............................................3

        C.      MR. CROUSE IS NOT QUALIFIED TO OFFER ANY TECHNICAL
                EXPERT OPINIONS BECAUSE HE LACKS THE LEVEL OF
                ORDINARY SKILL IN THE ART ......................................................................4

        D.      THE OPINIONS AND REPORTS OF MR. CROUSE..........................................5

III.    LEGAL STANDARDS ...........................................................................................6

IV.     ALL OF MR. CROUSE'S OPINIONS SHOULD BE EXCLUDED ................................9

        A.      HE IS NOT QUALIFIED TO OFFER OPINIONS IN THIS CASE  ....................9

        B.      MR. CROUSE'S OPINIONS DO NOT APPLY THE COURT'S
                CLAIM CONSTRUCTIONS...............................................................................12

V.      IF ALLOWED TO TESTIFY AS AN EXPERT, MR. CROUSE'S INTENDED
        OPINION TESTIMONY SHOULD BE NARROWED.......................................................13

        A.      MR. CROUSE'S APPORTIONMENT ANALYSIS IS IMPROPER..................13

        B.      MR. CROUSE'S CONVOYED SALES ANALYSIS IS IMPROPER.................16

        C.      MR. CROUSE'S REBUTTAL OPINIONS AS TO SECONDARY
                CONSIDERATIONS OF NON-OBVIOUSNESS SHOULD BE
                EXCLUDED AS UNRELIABLE .........................................................................17

VI.     CONCLUSION.......................................................................................................18

91475204v.1

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*BMC Software, Inc. v. Servicenow, Inc.*,
  No. 2:14-CV-903-JRG, 2016 WL 367251, at \*2 (E.D. Tex. Jan. 29, 2016) .........................13

*Centricut, LLC v. Esab Group, LLC*,
  390 F.3d 1361 (Fed. Cir. 2004)..................................................................................................10

*Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*,
  807 F.2d 955, 962-63 (Fed. Cir. 1986)). ...................................................................................7

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)..........................................................................................................6, 8, 13

*Elder v. Tanner*,
  205 F.R.D. 190 (E.D. Tex. 2001)......................................................................................6, 8, 13

*Hypotherm, Inc. v. American Torch Tip Company*,
  No. 05-cv-373-JD, 2009 WL 530064 (D. N.H. 2009)....................................................6, 9, 11

*In re GPAC Inc.*,
  57 F.3d 1573 (Fed. Cir. 1995)....................................................................................................7

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)....................................................................................................................8

*Levin v. Dalva Bros., Inc.*,
  459 F.3d 68, 78-79 (1st Cir. 2006) ...........................................................................................6

*Mission Pharmacal Co. v. Virtus Pharm., L.L.C.*,
  No. SA-13-CV-176-PM, 2014 WL 12480016, at \*3
  (W.D. Tex. Sept. 12, 2014)........................................................................................................13

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
  550 F.3d 1356 (Fed. Cir. 2008)......................................................................................6, 7, 9, 10

*United States v. Hicks*,
  389 F.3d 514 (5th Cir. 2004) .....................................................................................................8

*Wilson v. Woods*,
  163 F.3d 935 (5th Cir. 1999) ....................................................................................................6

**Federal Rules**

Fed. R. Evid. 104(a) ................................................................................................................8

Fed. R. Evid. 702 .........................................................................................................6, 8, 11

iii

## <u>**TABLE OF EXHIBITS**</u>

1.      UNITED STATES PATENT 9,400,640

2.      UNITED STATES PATENT 10,083,012

3.      GREGORY CROUSE OPENING REPORT ON INFRINGEMENT (SEALED)

4.      GREGORY CROUSE DECLARATION ON APPORTIONMENT (SEALED)

5.      GREGORY CROUSE REBUTTAL REPORT ON VALIDITY (SEALED)

6.      SELECTED PAGES FROM THE TRANSCRIPT OF THE MARCH 2, 2021 CROUSE DEPOSITION (SEALED)

7.      SELECTED PAGES FROM THE TRANSCRIPT OF THE MARCH 10, 2021 CROUSE DEPOSITION (SEALED)

8.      PLAINTIFF'S E-MAIL OF FEBRUARY 2, 2021 WITHDRAWING CERTAIN DEPENDENT CLAIMS

9.      INVALIDITY REPORT OF NCR'S TECHNICAL EXPERT SANDEEP CHATTERJEE, PH.D.

10.     SELECTED TRANSCRIPT PAGES FROM DEPOSITION OF QUENTIN OLSON (SEALED)

## I.   <u>**INTRODUCTION**</u>

Plaintiff CloudofChange, LLC's ("**Plaintiff**") has designated Mr. Gregory Crouse as a technical expert in this case.  Mr. Crouse has submitted three documents containing his opinions: an opening report on infringement; a declaration concerning apportionment; and a rebuttal report on the issue of patent validity.  Mr. Crouse, however, is not qualified to offer opinions in this case and, as a consequence, any such opinions would not assist the trier of fact.  Indeed, Mr. Crouse is not, employing his own standards, even one of ordinary skill in the art.  Consequently, Mr. Crouse should not be allowed to offer any opinion testimony to the jury.

Assuming that the Court finds Mr. Crouse to possess at least ordinary skill in the art (which he does not), the Court should nevertheless limit the scope of his testimony for the following reasons.  Mr. Crouse's analysis did not adopt the Court's Claim Constructions and his opinions are, therefore, irrelevant and would only serve to confuse the jury.  His apportionment analysis is not tied to the scope of the asserted claims and, as such, is improper.  Likewise, his opinions as to secondary considerations of non-obviousness are improper because they are not supported by an opinion that there is a nexus between such later in time activities of third parties and the asserted claims.  Finally, his brief mention of the concept of convoyed sales of hardware based upon the sale of NCR Silver also fails to track the proper legal analysis.

For all of these reasons, and as further explicated below, all of Mr. Crouse's opinions and testimony should be excluded.

91475204v.1

II.    **BACKGROUND AND FACTS**

    A.    **THE ASSERTED PATENTS RELATE TO POINT OF SALE SYSTEMS**

Plaintiff's complaint asserts two patents, *i.e.* U.S. Patent 9,400,640 ("**the '640 patent**") and U.S. Patent 10,083,012 ("**the '012 patent**") (collectively, the "**Asserted Patents**").[1]  Both of the patents are entitled "Web-Based Point of Sale Builder" and discuss a system used to build point of sale ("**POS**") terminals for use in a "store or business." ('640 patent, Col. 2, line 57).  The POS terminals process transactions at the point of sale.  The examples provided in the Asserted Patents include: a sub sandwich shop (Col. 4, line 46 and FIG. 4a); a pretzel store (Col. 2, line 36 and FIG. 1); and a pizza parlor (Col. 2, line 54 and FIG. 2).

The Abstracts describe the system as useful to "assist ***non-expert business operators*** in building, editing and testing a point of sale system to manage their businesses."

This Court conducted a *Markman* hearing on July 10, 2020 and, based on that hearing, issued its July 10, 2020 Claim Construction Order (Document 44), as well as its July 15, 2020 Supplemental Claim Construction Order (Document 47).  On August 31, 2020, Plaintiff submitted its Final Infringement Contentions alleging that NCR Silver infringes Claims 1-6 and 8-14 of the '640 patent and Claims 1-4 and 6-13 of the '012 patent.  Subsequently, on February 10, 2021, Plaintiff withdrew Claims 2, 9, and 10 of the '640 patent and Claims 10-13 of the '012 patent in connection with the submission of its expert witness report alleging infringement, such that the remaining asserted claims are Claims 1, 3-6, 8, and 11-14 of the '640 patent and Claims 1-4 and 6-9 of the '012 patent (collectively, the "**Asserted Claims**").  (*See* Ex. 8 (Plaintiff's e-mail of February 10, 2021).)

---

[1] The '640 Patent and the '012 Patent, along with their respective prosecution histories, are attached as Exhibits 1 and 2, respectively.

**B.**     <u>**THE LEVEL OF ORDINARY SKILL IN THE ART**</u>

In Sections VI. J. and K. of his Opening Report, Mr. Crouse sets forth his understanding

of the level of ordinary skill in the art. (<u>Ex. 3</u>, "**Opening Report**", p. 9).  But paragraph J. merely

repeats the definition provided by Plaintiff in response to NCR's Interrogatory No. 6 (<u>Ex. 3</u>, p. 9),

while paragraph K. then simply recites Crouse's agreement with that response:

> J.     **Level of Ordinary Skill in the Art.** My understanding is
> that CloudofChange contends that a person of ordinary skill in the
> relevant art, at the time of the invention of the Asserted Patents,
> would include at least one person having ***at least a Bachelor's of
> Science in computer engineering, software engineering, computer
> science, or an equivalent degree and/or practical work experience
> and two years of work experience with point of sale systems***.
>
> K.     Based on my experience and review of the patents, the
> prosecution history, and prior art, I agree with this understanding.

(Emphasis added.)

In contrast, NCR's technical expert Dr. Sandeep Chatterjee has also opined as to the level

of ordinary skill in the art:

> A person of ordinary skill in the art to whom the Asserted Patents
> are directed would have a Bachelor of Science in computer science
> or a related field, **and** approximately two years of professional
> experience or equivalent study in the design and development of
> web-   based systems, including web-based POS systems.

(<u>Ex. 9</u>, "**Invalidity Report**", p. 10, ¶ 37 (emphasis added).)

Dr. Chatterjee's definition is therefore more limiting that the broader definition of Mr.

Crouse.  Dr. Chatterjee explains how he arrived at this definition:

> The basis for my familiarity with the level of ordinary skill is my
> own technical experience and my interaction with students and
> professionals in the computing field who were at this level.  In
> reaching this opinion as to the hypothetical person of ordinary skill
> in the art, I have considered the types of problems encountered in
> the art, the prior art solutions to those problems, the rapidity with
> which innovations are made, the sophistication of the technology,

91475204v.1

and the educational level and professional capability of workers in
the field.

(<u>Ex. 9</u>, p. 10, ¶ 37.)

**C.    MR. CROUSE IS NOT QUALIFIED TO OFFER ANY TECHNICAL
EXPERT OPINIONS BECAUSE HE LACKS THE LEVEL OF ORDINARY
SKILL IN THE ART**

Mr. Crouse is not qualified as an expert witness.  He does not even qualify as a person of
ordinary skill in the art. The definition of the level of ordinary skill in the art provided by Mr.
Crouse includes an education standard and an alternative experience standard.  Mr. Crouse satisfies
neither.

Mr. Crouse admits that he does not meet the education standard. His only post-secondary
education is a Bachelor's degree of Business Administration in Finance, <u>not</u> a "Bachelor's of
Science in computer engineering, software engineering, computer science, or an equivalent
degree."  (<u>Ex. 3</u>, p. 25; 03-02-21; <u>Ex. 6</u>, Tr. 199:5 – 203:14.)

Mr. Crouse's work experience does not remedy his educational deficiencies related to point
of sale systems.  Indeed, his experience again does not meet his own requirements, which is the
second prong of his definition.  The practical work experience that Mr. Crouse does have in
connection with deployed systems related solely to assisting banks.  (<u>Ex. 7</u>, Tr. 8:15-19 "they were
all – all in connection with banks.")  He has never been involved in building a point of sale solution
for use in a restaurant or retail store, and certainly no system directed to assisting "non-expert
business operators."  (<u>Ex. 6</u> and <u>7</u> (Abstracts).)

In particular, from 2004 to 2007, Mr. Crouse worked for BearingPoint on two projects for
two clients who were banks, assisting them in developing a system to remove the paper from the
process of processing loan documents and deposit slips.  (<u>Ex. 6</u>, Tr. 20:8-9 "removing the paper";
31:25 – 32:8.)  From 2007 to 2009 he worked for Dell/Perot Systems on a project for a client who

91475204v.1

was a bank "to speed up the teller process. So, currency transactions and user – customer authentication . . . ."  (Ex. 6, Tr. 41: 21-23.)  In 2009, Mr. Crouse worked for KPMG on a project for yet another bank client to assist it with developing a system for on-boarding new customers.

None of these engagements involved systems that involved the use of web servers.  (Ex. 6, Tr. 30:12-13; 54:22-24; 58:21-22 "We were – we were not using web servers."; 71:20-23.)  Those systems were therefore not web enabled. (Ex. 6, Tr. 57:18-19 "These solutions were not web enabled in any way."; 60:14-15; 73:14-20).  Such systems also had nothing to do with the internet. (Ex. 6, Tr. 57: 3-4).

Those systems did not involve the use of the internet. (Ex. 6, Tr. 55:2-4; 60:13-14 "these solutions had nothing to do with the internet."; Tr. 70:24-25; 77:3-6 "We used . . .TCP/IP . . . again, not internet enabled…."). None of those systems involved the sale of food or retail items. (Ex. 7, Tr. 8:20 - 9:3).  None of those systems involved the use of credit cards to purchase items. (Ex. 7, Tr. 9:7-9).

D.    **THE OPINIONS AND REPORTS OF MR. CROUSE**

Mr. Crouse has submitted three documents containing his opinions and provided two depositions.  His opening report on infringement was submitted on February 10, 2021 (Ex. 3).  He submitted a declaration on February 24, 2021 (Ex. 4, "**Declaration**").  He submitted a rebuttal report on validity on February 24, 2021 (Ex. 5, "**Rebuttal Report**").

Mr. Crouse provided a deposition on March 2, 2021 concerning his opinions in the Opening Report and the Declaration.  He provided a deposition on March 10, 2021 concerning his opinions in the Rebuttal Report.

III.    **LEGAL STANDARDS**

The admissibility of expert testimony is governed by Fed. R. Evid. 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

The Supreme Court has held that, because expert witness testimony has the potential to "be both powerful and quite misleading," the district court must act as a gatekeeper to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595, 597 (1993) (emphasis added) (citations omitted); *Elder v. Tanner*, 205 F.R.D. 190, 194 (E.D. Tex. 2001). "The court, in its role as gatekeeper, must exclude expert testimony that is not reliable and not specialized, and which invades the province of the jury to find facts and that of the court to make ultimate legal conclusions." *Sundance, Inc. v. DeMonte Fabricating Ltd*., 550 F.3d 1356, 1364 (Fed. Cir. 2008).

"A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).  To testify as a technical expert on issues of patent infringement and invalidity, the witness must be "qualified as an expert in the pertinent art."  *Hypotherm, Inc. v. American Torch Tip Company*, No. 05-cv-373-JD, 2009 WL 530064, at *1 (D. N.H. 2009) (citing

*Sundance*, 550 F.3d at 1363); *see also Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78-79 (1st Cir. 2006) (excluding expert's opinion identifying antique clock because witness lacked experience in authenticating furniture of particular era through visual examination).

Thus, "where an issue calls for consideration of evidence from the perspective of one of ordinary skill in the art," a potential expert witness must, at a minimum, possess such ordinary skill in that art to testify on that issue." *Sundance*, 550 F.3d at 1363-64. "The person of ordinary skill in the art is a hypothetical person who is presumed to know the relevant prior art." *In re GPAC Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995). "In determining this skill level, the court may consider factors including 'type of problems encountered in the art; prior art solutions to those problems; … sophistication of the technology; and educational level of active workers in the field." Id. (quoting *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 962-63 (Fed. Cir. 1986)).

Dr. Chatterjee's definition is more appropriate in this case. The definition provided by Mr. Crouse is impermissible because, although his definition contemplates some general level of skill, it does not establish what ordinary skill entails in this particular art. *See Bow Jax, Inc. v. Sims Vibration Laboratory, Inc.*, 09-cv-47, pp. 7-8 (E.D. Wash. 2011) (rejecting the plaintiff's definition because "[a]lthough this definition contemplates some general level of skill, it does not establish what ordinary skill entails in the particular art….").

Mr. Crouse's acceptance of individuals who merely have "practical work experience and two years of work experience with point of sale systems" is too broad for the reasons espoused by the Court in *Bow Jax*:

> As a result, many individuals might qualify under this definition as having ordinary skill in the pertinent art, even though they lack any knowledge, skill, experience, training, or education in that particular art. This result is contrary to the requirement that a person having

7

> ordinary skill in the pertinent art be familiar with the common
> problems and  solutions in that same art.

*Bow Jax*, p. 8.

The proponent of expert testimony bears the burden of showing, by a preponderance of the evidence, that the expert is qualified under Rule 702.  *See* Fed. R. Evid. 104(a); *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 592, n.10 (1993); *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004) ("The proponent of expert testimony [] has the burden of showing that the testimony is reliable.").

As a threshold inquiry into admissibility, any expert testimony offered or introduced by a party must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Accordingly, district courts should exclude evidence that is based on unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999).

Conclusory opinions "without any elaboration or reasoning" should likewise be excluded as they "will not assist the trier of fact." *Elder*, 205 F.R.D. at 193-194. "It is not sufficient simply to list the resources [the expert] utilized and then state an ultimate opinion without some discussion of their thought process." *Id*. at 194.

Here, Mr. Crouse's opinions on this limitation should be excluded as unreliable and irrelevant because they do nothing more than repeat the Plaintiff's answer to an earlier interrogatory.  They lack any depth or analysis and, on their face, are overbroad.  *See Elder*, 205 F.R.D. at 193-194 (conclusory opinions "without any elaboration or reasoning" should be excluded as they "will not assist the trier of fact"); MGM Well, 2007 WL 150606, at *4 (excluding "opinions [that] appear to be mere ipse dixit," "parroting" party's views without "independent analysis" as

expert did not apply "the same rigor" he would have "to his work in the field of electrical engineering").

A technical expert must be qualified to provide testimony regarding the product or devise at hand.  In *Hypotherm, Inc. v. American Torch Tip Company*, No. 05-cv-373-JD, 2009 WL 530064  (D. N.H. 2009) the Court granted plaintiff's motion to preclude testimony from the defendant's technical expert because he was not qualified to give testimony on the issue of infringement.  *Id*. at \*5.  The technology at issue was plasma arc torch systems and the purported expert, James Sprague, held a Ph.D. in mechanical engineering.  *Id*. at \*5.  Sprague admitted that he had no experience or training in plasma arch torch systems.  Sprague based his testimony on his review of the patents and materials produced in discovery.  *Id*. at \*2.

## IV.   ALL OF MR. CROUSE'S OPINIONS SHOULD BE EXCLUDED

### A.   HE IS NOT QUALIFIED TO OFFER OPINIONS IN THIS CASE

In *Sundance*, the plaintiff charged the defendant with infringing claim 1 of its patent for "retractable segmented covering systems." *Sundance*, 550 F.3d at 1358. The defendant disclosed an expert witness, who was a patent lawyer and had practiced only briefly as an engineer, to testify about Patent Office practices, claim construction, noninfringement, invalidity, and inequitable conduct. *Id*. at 1360-61. The plaintiff objected to the witness's testimony at trial on issues of infringement and invalidity on the ground that he was not qualified to testify as a technical expert. *Id*. The district court, however, allowed the expert testimony.

On appeal, the Federal Circuit held that, contrary to the district court's decision, the witness was not qualified to testify on the issues of infringement or validity. *Id*. at 1361. The court noted that the issues of infringement and validity "are analyzed in great part from the perspective of a person of ordinary skill in the art, and testimony explaining the technical evidence from that

91475204v.1

perspective may be of great utility to the factfinder." *Id*.  In contrast, the court found that the defendant's witness had "no experience whatsoever in the field of tarps or covers" and that the defendant failed to show that the witness's "experience with engines and the like is sufficiently related to covers." *Id*. at 1362. The court stated that "[a]dmitting testimony from a person such as [the witness], with no skill in the pertinent art, serves only to cause mischief and confuse the factfinder." *Id*. In conclusion, the court stated: "We hold that it is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art."

Even the inventor of the patent may not qualify as an expert to opine on the issue of infringement.  In *Centricut, LLC v. Esab Group, LLC*, 390 F.3d 1361 (Fed. Cir. 2004), a case involving infringement of a patent pertaining to a plasma arc torch electrode, proof of infringement required showing that the accused electrode met the work function claim in the asserted patent. Work function was defined as "the potential step, measured in electron volts, which permits thermionic emission from the surface of a metal at a given temperature." *Id*. at 1364 (internal quotation marks omitted). The patent holder, Esab, offered the testimony of the patent inventor to prove infringement. *Id*. at 1368. The inventor, however, admitted that he was not an expert on work function, and therefore, the court did not credit his testimony. *Id*.

In *Sundance*, the Federal Circuit described the pertinent art as tarps or covers and cover systems, based on the subject of the patent claims. *Sundance*, 550 F.3d at 1362.  In *Centricut*, the pertinent art was the work function of electrode components, as claimed in the patent.  *Centricut*, 390 F.3d at 1368.  Here, the Asserted Patents describe a system useful to "assist non-expert business operators in building, editing and testing a point of sale system to manage their businesses."  (Abstracts).

The Asserted Patents also described the then-pertinent related art field as including the practice of "assembling point of sale systems" by "manually coding front-of-screen information." ('640 patent, Col. 1, lines 20-22).  "This manual process requires defining the position and operation of touch screen keys and their database correspondence."  Therefore, based on the patents themselves, the pertinent art is the manual process of defining the position and operation of touch screen keys and their database correspondence for point of sale systems.

The experience of Mr. Crouse, however, is in the field of banking.  Those systems were admittedly assembled using builder software provided by IBM (Ex. 6., Tr. 42:13-24).  He analogized it to a box of LEGOS with pre-built buttons and that he would merely "assemble the LEGO blocks."  (Ex. 6., Tr. 49:13).  His experience in the field of assembling systems therefore did not include the manual coding required to define the position and operation of touch screen keys and their database correspondence for point of sale systems.  The basis of Mr. Crouse's opinions on the issues of patent infringement and validity is his understanding of the Asserted Patents derived from reading and studying the patents themselves and from materials provided to him by counsel.  The only patents that Mr. Crouse had ever reviewed before his involvement in this case were four patents his father had obtained.  (Ex. 6., Tr. 129:9-18).

Therefore, Mr. Crouse fails to meet the qualifications to testify under Rule 702.  "A witness will not be permitted to testify as a technical expert on the issues of patent infringement and validity unless he is shown to be skilled in the pertinent art."  *See Hypotherm*, 2009 WL 530064 at \*3.  Mr. Crouse should therefore not be permitted to testify at trial as a technical expert on the issues of patent infringement and validity.

**B.      MR. CROUSE'S OPINIONS DO NOT APPLY THE COURT'S CLAIM CONSTRUCTIONS AND ARE THEREFORE NOT RELIABLE**

One of the Court's key claim constructions in this case is the construction of "point of sale builder software."  That limitation is contained in all of the Asserted Claims.  The Court construed that limitation to have its "plain and ordinary meaning, wherein plain and ordinary meaning means 'software that builds the POS terminals.'"  (Doc. 44, p. 3).  Later on in the Court's Claim Construction Order, the Court also included a statement for the jury that building does not include building hardware.  (Doc. 44, p. 3).  As a POS terminal comprises hardware and software, this means that the Court's claim construction of "point of sale builder software" means software that builds the POS terminal software.  Mr. Crouse, however, does not apply that claim construction. Instead, he adds the word "content" and attempts to ensnare within the scope of the Asserted Claims the mere act of data entry.  Why?  Because NCR's witnesses have testified, and there is no contrary evidence, that the POS terminal software used with NCR Silver is static code that is not "built or edited."

According to Mr. Crouse, mere data entry is building because it is "content management." (Ex. 3, p. 16, Section B: C. 4.)

> NCR Silver's POS content management system, or Builder, is a robust system.  POS content can be added or managed from both the POS device itself, or from a workstation with access to the back-office component.  Each item that is added to the system has the capability to have over 15 metadata components.  These are metadata components like modifiers (e.g., extra salt, extra cheese), variations (e.g., color, size), and tax treatment.

This content-based, data entry definition ensnares the mere entry of data and therefore fails to adopt the Court's construction that requires that the POS terminal be built.  Mr. Crouse admitted that his own understanding of the limitation in the '012 patent of "programmatically creating" requires "developing code." (Ex. 7, Tr. 94:10-13).

12

Mr. Crouse should therefore be precluded from providing testimony as to infringement or validity because his opinions are not based upon the Court's claim construction and would not assist the trier of fact. *See, e.g., Mission Pharmacal Co. v. Virtus Pharm., L.L.C.*, No. SA-13-CV-176-PM, 2014 WL 12480016, at *3 (W.D. Tex. Sept. 12, 2014) (excluding opinions on dissolution rate of compound with excipients as irrelevant because claim construction of "iron compound" excluded excipients); *BMC Software, Inc. v. Servicenow, Inc.*, No. 2:14-CV-903-JRG, 2016 WL 367251, at *2 (E.D. Tex. Jan. 29, 2016) (Experts are "excluded from providing any opinions based on an interpretation of the Court's construction that is the equivalent of any construction that the Court previously considered and expressly rejected"); *cf. Elder*, 205 F.R.D. at 193-194 (conclusory opinions "without any elaboration or reasoning" should be excluded as they "will not assist the trier of fact").

## V.   IF ALLOWED TO TESTIFY AS AN EXPERT, MR. CROUSE'S INTENDED OPINION TESTIMONY SHOULD BE NARROWED

Assuming that the Court finds Mr. Crouse to possess at least ordinary skill in the art (which he does not), the Court should nevertheless limit the scope of his intended expert testimony under *Daubert*.

### A.   MR. CROUSE'S APPORTIONMENT ANALYSIS IS IMPROPER

#### 1.   The Apportionment Opinions in Mr. Crouse's Opening Report

Mr. Crouse's Opening Report includes an opinion on apportionment to assist Plaintiff's damages expert Ambreen Salters.  (Ex. 3, p. 5, Section V. C.; p. 18, Section D.2 "for damages purposes, I have apportioned…."").  Although his Opening Report includes a section on legal standard he does not recite any legal standards concerning apportionment.  (Ex. 3, p. 7, Section VI.).

Section D of his Opening Report, which is entitled "Apportionment," includes ten paragraphs that are unsupported by any citation to anything. Without any apparent guidance as to the law, he "was asked to apportion the components of the accused product…to determine the **ratio** that the CloudofChange patented components bear on the totality of the components offered by the accused NCR product."  (Ex. 3, Section VII., "Section D: Apportionment", p. 17, ¶ 1 (emphasis added)).   This determination suffers from the same deficiencies as Mr. Crouse's infringement opinions in that the "CloudofChange patented components" are not actually limitations of the Asserted Claims.   This fundamental deficiency should, alone, preclude his apportionment opinions from being offered at trial.   Moreover, Mr. Crouse never defines the other side of the "ratio."   He never defines what he understands to be "the totality of the components" offered by the Accused Product.

Mr. Crouse lists four components of the Asserted Patents that he contends are contained within NCR Silver Essentials.  (Ex. 3, Section D.3).  As discussed below, however, he admits that some of those components are not limitations of the Asserted Claims.

Component 3 is defined by Mr. Crouse to be "Open source Technologies, non-proprietary code base, non-proprietary software."  The Asserted Claims do not require the use of "Open source Technologies, non-proprietary code base, non-proprietary software."  Mr. Crouse admitted that the Asserted Claims do not include that limitation. (Ex. 6, Tr. 153:20-154:17).

Plaintiff's corporate representative and one of the listed inventors Quentin Olson admitted that the Asserted Patents did not contribute open source software to the POS industry.  Mr. Olson admitted that he himself used open source components in his own projects, including Apache.  (Ex. 10, Tr. 59:11-19).

### a.   Mr. Crouse's Opinion as to Value of the Components Is Conclusory

In Section D. 10, Mr. Crouse opines that his apportionment analysis is "based on my analysis of the value of the patent components based on the importance of the patented components to the function of the POS system in the manner intended."  This opinion is conclusory and not supported by any analysis of value, either from a technical perspective or a monetary perspective.

Mr. Crouse does not show his math for arriving at the 80% number.  Thus, there is no way to understand or to meaningfully rebut that number.  Mr. Crouse asserts that the 80% number is "approximately 80% of the essential functionality of the POS system" but his four components ignore other components that form an essential part of the functionality of any POS system, including: hardware such as POS terminals and PC workstations (required for the '640 patent); the internet; and internet access.

For the remaining 20% of his analysis he states that those include "additional options such as security and reporting features and other add-on features customized for specific uses such as restaurants."

### b.   Mr. Crouse's Opinion Is Limited to NCR Silver Essentials

Although there are two versions of the Accused Product, NCR Silver Essentials and NCR Silver Pro, Mr. Crouse does not make an apportionment analysis for NCR Silver Pro.  Thus, at a minimum, he should not be allowed to offer opinion testimony as to apportionment concerning NCR Silver Pro.

### 2.   The Apportionment Opinions in Mr. Crouse's Declaration

Two weeks after his Opening Report, Mr. Crouse submitted a ten paragraph declaration on apportionment. Mr. Crouse first alludes to "core functionality" of the Asserted Patents.  (Ex. 4, ¶ 2).  He then talks about "benefits" of the Asserted Patents.  (Ex. 4, ¶ 3).  He then repeats his list

15

of six "high-level components" of NCR Silver (Ex. 4, ¶ 4) which he first set forth in Section VI. C. of his Opening Report.  Without any explanation and without citing to any evidence in support, he then opines that the first four components are: "core functions of NCR Silver"; "taught by the Invention"; and "are significant differentiating drivers of demand for the accused NCR Silver product." (Ex. 4, ¶ 5).  As previously discussed, those four components are not consistent with the scope of the Asserted Claims.  One of the components is admittedly not a limitation of the Asserted Claims.  Thus, even assuming *arguendo*, that those four components were significant differentiating drivers of demand for NCR Silver, such an assumption would not inform the trier of fact as to the issue of apportionment between the value of the Asserted Claims and other commercially relevant factors.

Without any evidentiary citation, he further opines that "[f]rom a technology perspective, the patented Invention drives demand for the accused NCR Silver product."  (Ex. 4, ¶ 8).  The Declaration defines the Invention to mean the Asserted Patents generally.  This is fundamentally different from specifically focusing on the Asserted Claims, which is defined separately in footnote 1 of the Declaration.

Also without any evidentiary citation, the Declaration apparently expands the apportionment analysis to cover both versions of NCR Silver (*i.e.* Essentials and Pro); whereas his apportionment analysis in his Opening Report focuses on only NCR Silver Essentials.  This unexplained and expanded scope of the purported apportionment opinion defies logic because the Pro version includes more features than the Essential version.  Under Mr. Crouse's own "ratio" construct, the additional features of Pro should have impacted the "totality of the components offered by the accused NCR product" part of his ratio.  His Declaration does not repeat his 80%

16

opinion as to Essentials; and provides no opinion as to what "percentage" should be applied to the Pro version of NCR Silver.

## B.     MR. CROUSE'S CONVOYED SALES ANALYSIS IS IMPROPER

Mr. Crouse's Declaration includes an opinion on convoyed sales. (Ex. 4, ¶ 9). This single paragraph cites to the deposition testimony of NCR's corporate representative Kristin Schoonover for the proposition that NCR Silver can only run on certain hardware devices and that NCR's customers have the option to purchase hardware devices to run NCR Silver software. He then opines that "NCR's hardware revenues and profits are driven by sales of the accused NCR Silver product and the core functionality of the Patents-in-Suit."

Mr. Crouse sets forth no qualifications indicating that he is an expert in the area of market demand specifically or even damages, generally. Moreover, he performed no market survey to evaluate demand for NCR Silver, much less a survey designed to determine which factors did or did not drive demand for the product. (Ex. 6, Tr. 88:17-20). This despite him having prior experience conducting study groups "to gauge customer desire" for technologies during his prior employments involving banking systems (Ex. 6, Tr. 82:6-9).

## C.     MR. CROUSE'S REBUTTAL OPINIONS AS TO SECONDARY CONSIDERATIONS OF NON-OBVIOUSNESS SHOULD BE EXCLUDED AS UNRELIABLE

In Section VI. F., Mr. Crouse' Rebuttal Report includes opinions on secondary considerations of non-obviousness. (Ex. 5, p. 39). Mr. Crouse opines that the Asserted Patents have been "copied by others." (Id., ¶ 215). He defines that group to be the recipients of Plaintiff's letters concerning the '640 patent. (Id.). He admits that he has not analyzed any of the products of those third parties for infringement purposes. (Id., ¶ 215). Mr. Crouse admittedly performed only "a superficial review" of those third party products and opines only that "others are using

similar hosted, cloud-based technologies." (*Id.*)  The opinion therefore does not specify to which subset of those third parties he may be referring.  Those opinions should be precluded because they are admittedly not supported by any opinion that there is a nexus between the Asserted Claims and the alleged third party activities.

V.      **CONCLUSION**

The opinions and testimony of Plaintiff's proffered technical expert should be excluded.


Dated: March 12, 2021                              Respectfully submitted,

                                                   /s/ *Charles E. Phipps*
                                                   Charles E. Phipps
                                                        Texas State Bar No. 00794457
                                                        cphipps@lockelord.com
                                                   Steven F. Meyer
                                                        Admitted *pro hac vice*
                                                        smeyer@lockelord.com
                                                   Daniel G. Nguyen
                                                        Texas State Bar No. 24025560
                                                        dnguyen@lockelord.com
                                                   LOCKE LORD LLP
                                                   2200 Ross Avenue, Suite 2800
                                                   Dallas, Texas 75201
                                                   (214) 740-8000 Telephone
                                                   (214) 740-8800 Facsimile

                                                   **ATTORNEYS FOR DEFENDANT**
                                                   **NCR CORPORATION**

                                        **CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all other counsel of record.

                                                   /s/ *Charles E. Phipps*
                                                   Charles E. Phipps

91475204v.1