UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

```
----------------------------------------------------------------- x
CloudofChange, LLC,                                               )
                                                                  )
                Plaintiff,                                        )
                                                                  )
        v.                                                        ) 6:19-CV-00513-ADA
                                                                  )
NCR Corporation,                                                  )
                                                                  )
                Defendant.                                        ) JURY TRIAL DEMANDED
                                                                  )
----------------------------------------------------------------- x
```

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**

Charles E. Phipps
　Texas State Bar No. 00794457
　cphipps@lockelord.com
Charles S. Baker
　Texas State Bar No. 01566200
　cbaker@lockelord.com
Steven F. Meyer
　Admitted *pro hac vice*
　smeyer@lockelord.com
Donald E. Frechette
　Admitted *pro hac vice*
　donald.frechette@lockelord.com
Scarlett Collings
　Texas State Bar No. 24001906
　scarlett.collings@lockelord.com
Daniel G. Nguyen
　Texas State Bar No. 24025560
　dnguyen@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
(214) 740-8000 Telephone
(214) 740-8800 Facsimile

**ATTORNEYS FOR DEFENDANT
NCR CORPORATION**

**TABLE OF CONTENTS**

I.   NCR IS ENTITLED TO A SUMMARY JUDGMENT OF NON-INFRINGEMENT.......1

    A.   THE POINT OF SALE BUILDER SOFTWARE LIMITATION…………….…...1

    B.   THE WEB SERVER LOCATION LIMITATION……………………………..…4

    C.   THE INTERACTION LIMITATION…………………………………………......6

    D.   THE SUBSCRIPTION LIMITATION…..…………………………………….…7

    E.   THE ASSERTED CLAIMS ARE SYSTEM CLAIMS: PLAINTIFF FAILS
        TO RAISE A GENUINE ISSUE AS TO DIRECT INFRINGEMENT
        BY NCR…..………………………………………………………………………….8

    F.   THE MERE EXISTENCE OF COMPETING EXPERT OPINIONS
        IS INSUFFICIENT TO DEFEAT A MOTION
        FOR SUMMARY JUDGMENT……………………………………………….…9

    G.   PLAINTIFF HAS FAILED TO RAISE A GENUINE ISSUE
        AS TO INDIRECT INFRINGEMENT………………………………………...10

II.  CONCLUSION…………………………………………………………………......…10

# TABLE OF AUTHORITIES

**Federal Cases**

*Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*,
   2020 WL 1333131 (D. Del. Mar. 23, 2020) ..............................................................................10

*Centillion Data Sys., LLC v. Qwest Commc's Int'l., Inc.*,
   631 F.3d 1279 (Fed. Cir. 2011)................................................................................................10

*In re Gabapentin Patent Litig.*,
   503 F.3d 1254 (Fed. Cir. 2007)................................................................................................11

*Medical Instrumentation and Diagnostics Corp. v. Elekta AB*,
   344 F.3d 1205 (Fed. Cir. 2003)................................................................................................11

*Tol-O-Matic, Inv. V. Proma Produkt-Und Marketing Gesellschaft m.b.H.*,
   945 F.2d 1546 (Fed. Cir. 1991)..................................................................................................1

*Zoltek Corp. v. U.S.*,
   95 Fed. Cl. 2010 (U.S. Court of Claims 2011) ........................................................................11

## **TABLE OF EXHIBITS**

A. NCR CONSOLE LABOR MANAGEMENT

B. CONSOLE SCHEDULES – INTEGRATION WITH NCR ALOHA

C. PRESS RELEASE – NCR ACQUIRES CIMPLEBOX AND CONSOLE PRODUCT

## I. NCR IS ENTITLED TO A SUMMARY JUDGMENT OF NON-INFRINGEMENT

In its Response (Document 82), Plaintiff CloudofChange, LLC ("Plaintiff") attempts, but fails, to raise a genuine issue as to whether NCR Silver meets five of the limitations from the Asserted Claims. As set forth in this reply in support of its Motion for Summary Judgment of Non-infringement, NCR demonstrates that there are no genuine issues in dispute as to whether NCR Silver meets those five claim limitations. NCR Silver does not; and therefore does not infringe as a matter of law. This reply and the opening brief have identified five separate claim limitations that are not met by NCR silver, any of which alone demonstrates that NCR Silver does not infringe as a matter of law. Should the Court determine that NCR has sustained its burden just to one of the claim limitations from the Asserted Claims, NCR would still be entitled to a summary judgment of non-infringement. *See* NCR's Motion, p. 16 ("the absence of even one [claim] element avoids infringement." *Tol-O-Matic, Inv. V. Proma Produkt-Und Marketing Gesellschaft m.b.H.*, 945 F.2d 1546, 1552 (Fed. Cir. 1991)).

### A. The Point of Sale Builder Software Limitation

To avoid a summary judgment of non-infringement, Plaintiff improperly seeks refuge in an incomplete quote from a manual of an *unaccused* product, claiming that "NCR's [non-infringement] argument is contradicted by its own documents concerning its product." The "product" cited by Plaintiff in this "building" quote is NCR Console for Labor Management (Ex. A), not the accused NCR Silver POS solution. The complete quote states "as you build a schedule in NCR Console, they [the schedules] can now be synchronized into the Silver back-office through an API integration." From that, Plaintiff asserts "there is a factual dispute between NCR Silver's documentation for NCR Silver on the one hand, and Dr. Chatterjee on the other." There isn't. NCR Console is a wholly different product that has nothing to do with point of sale. As the quote

itself demonstrates, the alleged "building" occurs in Console, not Silver, and that which is built is an employee schedule, not a point-of-sale screen. The quote further confirms Console is a separate product from Silver, noting the distinction between each, and that each can be connected through an API integration.

NCR Console is not a part of, nor is it unique to, NCR Silver. NCR Console is separately purchased for use with various third party and NCR POS systems for labor management, not point of sale. NCR Console can be used with unaccused POS solution NCR Aloha (Ex. B) for example. NCR Console can also be used with third party POS solutions through an API provided by NCR, including Treatware by Innovative Computer Systems ("ICS") and NorthStar by Computer Business System ("CBS"). NCR charges $19/month for the use of NCR Console. (Ex. A, p. 1). NCR Console is a product acquired by NCR with its acquisition of Cimplebox in 2016. (Ex. C).

Plaintiff further tries, but again fails, to create a factual controversy over the building limitation by reference to a single dependent claim from the '012 patent (*i.e.* dependent claim 2). Claim 2 adds a limitation to Claim 1 requiring that the instructions sent by a user of the system to the POS builder interface (not the POS builder software which is a separate element residing on a web server and from which the alleged "building" comes) "not [be] formatted in programming code." (Ex. 2 to NCR's Motion, Col. 6, lines 55-58). This narrowing limitation modifies the instructions that are sent between a user and the POS builder interface, not the POS builder software, and therefore does not even speak to the communications between the POS builder software and the POS terminal. Plaintiff's reliance upon the language of dependent Claim 2 of the '012 patent is diversionary and fails to address the issue of whether NCR Silver has POS builder software that builds a POS terminal. It does not.

The Court construed the limitation "POS builder interface," which appears in Claim 1 of the '012 patent, to mean "an interface to the POS builder software." (Document 44, p. 4). Plaintiff ignores this construction. Claim 1 of the '012 patent further requires that the POS builder interface be used to access the POS builder software for "programmatically creating or modifying" the POS terminal. (Ex. 2 to NCR's Motion, Col. 6, lines 39-40). Mr. Crouse acknowledges that this limitation requires creating or modifying code. (Ex. 12 to NCR's Motion, Tr. 94:2-19). There is no dispute as to the fact that NCR Silver cannot be used to create or modify the code on the POS terminal.

Plaintiff further seeks refuge in Mr. Crouse's deposition testimony concerning his inspection and use of NCR Silver. As he did in his Report, however, he ignores the Court's construction of the POS Builder Software Limitation. As acknowledged in Plaintiff's Response to NCR's *Daubert* Motion (Document 83, p. 9), the Court construed the claim limitation "point of sale builder software" to mean "software that builds the POS terminals.'" *See* Doc. 44, p. 3.

Mr. Crouse's deposition testimony, however, asserts that it is data entry, not software, that builds the POS terminals. His testimony focuses on "adding all of the data" and "content." (Plaintiff's Response, p. 4). Mr. Crouse further testified that the POS builder software limitation is met simply by data entry "[t]o the extent that data is used to build content." (Plaintiff's Response, p. 5). In order for NCR Silver to infringe the POS Builder Software limitation, such mere data entry would have to build the POS terminal (and in the case of the '012 patent, the POS terminal software itself); which it does not of course. Plaintiff's contrary position, that mere entry of data is sufficient, renders the concept of "building" meaningless.

All of the software used on the POS terminals used in connection with NCR Silver is pre-built. NCR's use of a pre-built app (wholly downloaded or pre-installed) as the POS terminal

3

software (which cannot be modified by a merchant) into which merchants can input data so as to use NCR Silver does not meet the limitation of the Asserted Claims that require the presence and use of POS builder software to build a POS terminal. Thus, NCR Silver does not infringe the Asserted Claims because the POS terminal software used by merchants who use NCR Silver is pre-built. In the case of the '012 patent, a merchant cannot and does not create or modify POS terminal software in connection with NCR Silver. NCR Silver therefore does not meet the POS builder software limitation.

Plaintiff's infringement allegations are also defective because they fail to raise a genuine issue as to where NCR Silver POS terminal software comes from. The Asserted Claims require that the POS terminals used in the systems of the Asserted Patents come from the POS builder software. (Ex. 2 to NCR's Motion, Col. 6, lines 30-31 ("one or more POS terminals generated by said POS builder software"; the '640 patent, Col. 6, lines 18-20 "point of sale builder software that runs on said web server…to build or edit said POS terminals.")). In contrast, the POS terminal software used by merchants who purchased NCR Silver comes from either the Apple App Store (as downloaded by a merchant at his or her discretion) or is pre-loaded on an Android tablet (during the assembly process). (Ex. 3 to NCR's Motion, Ex. A to FICs, p. 10; NCR's Motion, p. 19). The POS terminal software used with NCR Silver therefore does not come from any POS builder software as required by the Asserted Claims.

  B. <u>**The Web Server Location Limitation**</u>

To avoid a summary judgment that NCR Silver does not meet the Web Server Location Limitation, Plaintiff asserts that NCR ignores deposition testimony from NCR witnesses, disregards the Court's claim construction and substitutes its own definition of "web server." NCR

4

does none of those things. Plaintiff's response to this issue tellingly omits the word "location" and refers to this issue as the "web server limitation" instead of the Web Server **Location** Limitation.

The deposition testimony from NCR corporate representative witnesses cited by Plaintiff does **not** demonstrate that any POS builder software, assuming *arguendo* that NCR Silver has POS builder software (it does not), is located **on a web server** as required by the Asserted Claims. (The '640 patent, Col. 6, line 18 ("point of sale builder software that runs **on** said web server"); the '012 patent, Col. 6, lines 28-29 )"a web server including POS builder software **installed thereon**.")).

Plaintiff's expert admits that he does not know where NCR's software resides. (NCR's Motion, p. 13). NCR's technical expert has testified that the NCR software resides on application servers, not web servers. (NCR's Motion, p. 13, n. 4). NCR's corporate representative witnesses did not testify during their depositions to the contrary. The deposition testimony of Mr. Quinn cited by Plaintiff merely indicates that if a user does interact with a web server in connection with operating NCR Silver it may interact with a web server. He did not testify about the location of that NCR software. Likewise, the deposition testimony of Ms. Schoonover cited by Plaintiff merely indicates that some of the servers that Google provides to NCR are web servers. Her testimony did not relate to the type of server upon which the NCR software used with NCR silver resides. Thus, Plaintiff has failed to raise a genuine issue as to whether NCR Silver has software that "runs on" or is "installed" on a web server. The only evidence of record is that the NCR software used in connection with NCR Silver is installed on and runs on an application server. (*See* NCR's Motion, Ex. 14, ¶ 5-8). Plaintiff's technical expert Mr. Crouse has admitted that if NCR's software is on a non-web server then there would be no infringement of the Asserted Claims. (*Id*. at ¶ 7; *see also* NCR's Motion, Ex. 11, Crouse Dep. Tr. (03/02/21), 247:6-11). NCR

5

is therefore entitled to a summary judgment of non-infringement of the Asserted Claims because the web server location limitation is not met.

Plaintiff's Response does not clearly articulate how it asserts that NCR ignores the Court's claim construction of this limitation. Instead, NCR's Motion and NCR's technical expert adopt that construction. The Court has construed "web server" to mean "hardware and software that uses HTTP (hypertext transfer protocol) to serve data or files that form web pages." (Document 44, p. 2; Document 47, Suppl. Claim Construction Order, p. 7). Under that construction, as discussed above, NCR Silver does not infringe.

It is actually Plaintiff who engages in an improper attempt to modify the Court's claim construction. In its Response, Plaintiff attempts to expand the Court's construction to include the Relation Database shown in FIG. 3 of the Asserted Patents. But the Court's construction does not include the "Relation DB" from FIG. 3, which is depicted in a separate box communicating with a Web Server with Apache web server software. Even if the Court were to alter its own construction of this claim limitation, it would not ensnare NCR Silver because NCR silver software is not installed on and does not run on a database. Instead, as indicated above, NCR silver is installed on and runs on a server that is not a web server. The software that NCR does make available to merchants as a Service resides on application servers which do not use HTTP to serve data or files that form web pages. (*See* NCR's Motion, Chatterjee Dep. Tr., Ex. 13, 125:18 ("the application server"); NCR's Motion, Ex. 14, ¶ 8). This is the same software used by Mr. Crouse during his inspection. He admits that he does not know where that software resided. (NCR's Motion, p. 13).

## C. The Interaction Limitation

The only evidence cited by Plaintiff to assert that there is a genuine issue as to whether NCR meets this limitation is NCR's own corporate representative's deposition testimony.

As to the asserted claims from the '012 patent, the interactions at issue are between the POS builder software and the POS terminals. (Col. 6, lines 42-43). Those interactions are intended to allow the "system" to perform functions in accordance with instructions sent from the POS builder interface. (Col. 6, lines 44-47). Although the instructions to the POS builder interfaces need not be formatted in programming code, as per Claim 2, the interactions between the "system" and the POS terminals "for programmatically creating or modifying" the POS terminals, as admitted by Plaintiff's technical expert Mr. Crouse, requires creating or modifying source code. (NCR's Motion, Ex. 12, Crouse Dep. Tr., 94:2-19). As discussed above, NCR silver does not allow for such interactions because the software code resident on the POS terminals is static. (NCR's Motion, Section II. B., pp. 6-13; and Section IV. A. 1. a., pp. 18-21).

As to the asserted claims from the '640 patent, the interactions at issue are between a "subscriber company's POS terminals" (Col. 6, lines 24-25) and "web server software from said vendor's remote servers" (Col. 6, line 26). Those interactions must occur "repeatedly" (Col. 6, line 25) and are required, i.e. "in order to perform the subscriber's desired terminal function." (Col. 6, lines 26-27). But NCR Silver does not require such repeated interaction in order to process POS transactions. (NCR's Motion, Section IV. A. c., pp. 22-24).

## D. The Subscription Limitation

This limitation is contained only in the asserted claims from the '640 patent. Here again, the only evidence cited by Plaintiff to assert that there is a genuine issue as to whether NCR meets this limitation is NCR's own corporate representative's deposition testimony. But Mr. Quinn was

not asked about whether the subscription fee charged by NCR to a merchant in connection with NCR Silver involves the service of providing a web server to the merchant. Instead, he was asked generally about the fee and whether the NCR Silver Back Office includes a web server; but he was not asked if NCR charges a merchant a fee for use of a web server. It does not. (*See* NCR's Motion, Section IV. A. d., pp. 24-26). Likewise, the deposition testimony of Ms. Schoonover cited by Plaintiff does not address the issue.

The undisputed evidence is that the monthly subscription fee charged by NCR to merchants who purchase NCR Silver is for the use of a suite of applications. (Motion, pp. 24-26 (citing to the NCR Silver Merchant Agreement (Dep. Ex. 13, p. 1) indicating that the subscription service charged by NCR affords merchants the use of "Software as a Service suite of applications ("Service")). Even assuming *arguendo* that the software provided as part of the service was on a web server (which it is not), the fee charged by NCR does not include a fee attributable to web servers. Thus, merchants are not provided web servers for their subscription price. Moreover, the software that is provided as part of the Service resides on non-web servers, as discussed above.

      **E.    The Asserted Claims Are System Claims: Plaintiff Fails
To Raise A Genuine Issue As To Direct Infringement By NCR**

Plaintiff again alleges that NCR's own witnesses' deposition testimony creates a genuine issue as to the direct infringement of the asserted system claims. But the cited testimony is insufficient to do so and is mischaracterized by Plaintiff. The cited testimony merely indicates that, yes, NCR charges a fee to a merchant who purchases NCR Silver. The cited testimony does not establish a genuine issue as to whether NCR makes or uses the system of the Asserted Claims under the standard for infringement of a systems claim, as set forth in NCR's Brief, pp. 26-30.

The cited deposition testimony does not contradict the facts established in NCR's Motion that NCR: 1) does not provide the internet used in connection with any system employed by a

merchant; 2) does not provide a merchant with internet access; 3) does not provide POS terminal hardware for users who use iOS devices (the deposition testimony cited by Plaintiff confirms this fact (Response, p. 17, Dep. Tr. 58:9-12)); and 4) does not provide merchants with PC workstations. Plaintiff's Response assumes that customers do provide their own PC workstations (Response, p. 17).

As to the standard for infringement of a systems claim by making a system, Plaintiff does not raise any genuine issue because it is undisputed that NCR does not combine all of the claim elements. Moreover, it is undisputed that the merchant, rather than NCR, performs the final steps to assemble the system. Thus, under the standard set forth in *Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*, 2020 WL 1333131 (D. Del. Mar. 23, 2020), NCR does not infringe the Asserted Claims by making the claimed system.

Likewise, as to the standard for infringement of a system claim by using a system, Plaintiff does not raise any genuine issue because it is undisputed that the merchants, not NCR, put NCR Silver into service by combining it with other elements provided by third parties and it is the merchants to use NCR silver in connection with processing point of sale transactions. Those merchants control that system as a whole and obtain benefit from it. Thus, under the standard set forth in *Centillion Data Sys., LLC v. Qwest Commc's Int'l., Inc.*, 631 F.3d 1279 (Fed. Cir. 2011), NCR does not infringe the Asserted Claim by using the claimed system. Under Plaintiff's theory, even the third parties who provide internet access to the merchants who purchased NCR Silver would be direct infringers because such third parties control the internet access and benefit by charging for that service.

It is difficult to follow Plaintiff's argument beginning on page 18 of its Response. To the extent that the Merchant Agreement requires the merchant to allow NCR to access "your network,"

such statement merely confirms that the network used by the merchants is their network, not NCR's. The title of the section from the Merchant Agreement that is reproduced by Plaintiff is entitled "Your Responsibility." This means that the following section 8.1 is the Merchant's responsibility, not NCR's. At most, merchant's "may" be required to allow NCR "to access and correct transaction or input data." (Plaintiff's Response, p. 19). This statement does not create a genuine issue; but instead confirms that it is the merchant who controls access to the system, not NCR.

    F.    **The Mere Existence Of Competing Expert Opinions Is Insufficient To Defeat A Motion For Summary Judgment**

Plaintiff cites *In re Gabapentin Patent Litig.*, 503 F.3d 1254 (Fed. Cir. 2007) for the proposition that the existence of competing expert reports/opinions negates any motion for summary judgment. If Plaintiff's characterization of that case was accurate, then any motion for summary judgment could be defeated merely by hiring a competing expert. Luckily, for the sake of judicial economy, that case does not so hold. In that case, the Federal Circuit reversed a district court's summary judgment of non-infringement because it found that, as to product patent claims that included a limitation that a certain component not exceed a certain amount, differing actual test results from different tests conducted by the competing technical experts were sufficient to create a genuine issue as to that material fact. In this case, the claims at issue are systems claims and neither expert conducted product tests. Plaintiff further cites to *Medical Instrumentation and Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205 (Fed. Cir. 2003) but that case likewise, luckily, does not stand for the proposition that the mere existence of competing expert reports or opinions negates a summary judgment. Moreover, the issue in that case was patent invalidity, not non-infringement. Plaintiff also relies upon *Zoltek Corp. v. U.S.*, 95 Fed. Cl. 2010 (U.S. Court of Claims 2011), but that case is inapposite because it relates to the issue of obviousness and the

Court held that the government failed to meet its burden on summary judgment to prove that there were no genuine issues as to whether the patent was invalid as obvious. The Court performed a detailed analysis of the arguments and did not simply note the existing of competing expert opinions and deny the motion.

### G. Plaintiff Has Failed to Raise A Genuine Issue As to Indirect Infringement

Plaintiff admits that its expert has not opined as to the issue of indirect infringement. Moreover, Plaintiff raises no arguments to demonstrate that NCR is not entitled to a summary judgment of no indirect infringement of the Asserted Patents. This issue is not moot because Plaintiff included claims of indirect infringement in its Complaint and has not dismissed those claims. (*See* Document 1, paragraphs 22, 23, 37 and 38).

## II. CONCLUSION

NCR has demonstrated that there are no genuine issues as to the facts material to the issue of whether NCR has not infringed the Asserted Claims from the Asserted Patents. NCR's motion for summary judgment of non-infringement should therefore be granted.

Dated: April 2, 2021                              Respectfully submitted,

/s/ *Charles E. Phipps*
Charles E. Phipps
   Texas State Bar No. 00794457
   cphipps@lockelord.com
Charles S. Baker
   Texas State Bar No. 01566200
   cbaker@lockelord.com
Steven F. Meyer
   Admitted *pro hac vice*
   smeyer@lockelord.com
Donald E. Frechette
   Admitted *pro hac vice*
   donald.frechette@lockelord.com
Scarlett Collings
   Texas State Bar No. 24001906
   scarlett.collings@lockelord.com
Daniel G. Nguyen
   Texas State Bar No. 24025560
   dnguyen@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
(214) 740-8000 Telephone
(214) 740-8800 Facsimile

**ATTORNEYS FOR DEFENDANT
NCR CORPORATION**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all other counsel of record.

                                                /s/ *Charles E. Phipps*
                                                Charles E. Phipps