UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

------------------------------------------------------------ x
CloudofChange, LLC                        )
                                          ) Case No. 6:19-CV-00513
            Plaintiff,                    )
                                          )
    v.                                    ) JURY TRIAL DEMANDED
                                          )
NCR Corporation                           )
                                          ) **PUBLIC VERSION**
            Defendant.                    )
                                          )
------------------------------------------------------------ x

## NCR'S RESPONSE IN OPPOSITION TO CLOUDOFCHANGE'S MOTIONS IN LIMINE

Plaintiff CloudofChange, LLC's ("CloudofChange" or "Plaintiff") Motion in Limine contains fourteen unrelated, standalone motions. Defendant NCR Corporation ("NCR" or "Defendant") can agree, or can agree in part, to Nos. 3, 7, 10, 11, 12, and 14, but the remainder have no merit and NCR requests that they be denied. Each is separately addressed below.

**NCR's Response to Motion in Limine 1:** REFERENCES TO CLOUDOFCHANGE AS A NON-PRACTICING ENTITY AND PATENT OWNER

NCR should not be excluded from introducing evidence about CloudofChange, its business, and its business structure nor be excluded from introducing evidence or information about the entity that brought the suit, the partners, their ownership interests, or their interests in the outcome of the litigation. All of this information is relevant and provides basis and evidence for commercial success and damages. Courts have determined that these types of evidence and information are relevant to damages and the *Georgia-Pacific* factors. *See Carucel Invs., L.P. v. Novatel Wireless, Inc.*, 16-cv-118, 2017 U.S. Dist. LEXIS 50855, *41-42 (S.D. Cal. Apr. 3, 2017) (*citing Digital Reg. of Texas, LLC v. Adobe Sys., Inc.*, 12-1971, 2014 U.S. Dist. LEXIS 115565, at

1

\*12 (N.D. Cal. Aug. 19, 2014) (explaining that the plaintiff's "status as a non-practicing entity is relevant to damages and the Georgia-Pacific factors.") NCR should not be excluded from identifying or referring to CloudofChange as a non-practicing entity because it is a neutral term and not pejorative. NCR has never called, nor intends to identify, CloudofChange as a "troll" or any other derogatory term. Yet, identifying CloudofChange as a non-practicing entity is accurate, and not a pejorative term. *SSL Servs., LLC v. Citrix Sys.,* 08-cv-158, 2012 U.S. Dist. LEXIS 198173, \*7-8 (E.D. Tex. May 23, 2012) ("Citrix shall not refer to SSL using derogatory terms including but not limited to 'paper patent,' 'shell corporation,' 'patent troll,' 'pirates,' 'playing the lawsuit lottery,' and 'corporate shell game,' or any similar derogatory terms to identify SSL, SSL's patents in suit, or companies comparable to SSL. However, Citrix shall be permitted to refer to SSL by the term 'non-practicing entity' or 'non-practicing plaintiff.'") (emphasis added); *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 14-cv-03657, Case 6:18-cv-00308-ADA Document 232 Filed 04/29/20 Page 2 of 92 2019 U.S. Dist. LEXIS 120182, \*4 (N.D. Cal Jul. 18, 2019) ("Micron will not…nor will it be allowed to refer to MLC as a 'patent troll' or similar pejorative term…However, Micron will be permitted to use more neutral terms such as 'non-practicing entity' when referring to MLC.") (emphasis added); *Droplets, Inc. v Overstock.com, Inc,* 11-cv-401, Dkt. 321 (E.D. Tex. Dec. 10, 2014) (the Court "granted as to any references to Plaintiff as a 'troll.' This limine shall not prevent Defendants from referring to Plaintiff as a 'patent assertion entity' or "nonpracticing entity.'") Further, contrary to what CloudofChange contends, in *Rembrandt Wireless Techs.*, the Court concluded "[t]his limine shall not prevent Defendants from arguing that Plaintiff is a patent assertion entity that does not manufacture or sell products in this field." *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 13-cv-213, 2015 U.S. Dist. LEXIS 20306, at \*6-7 (E.D. Tex. Jan. 31, 2015). Accordingly, CloudofChange's motion to exclude NCR

from referring to CloudofChange's business activities and structure and to prevent NCR from referring to CloudofChange as a non-practicing entity or non-practicing plaintiff should be denied. *Packet Intelligence LLC v. NetScout Sys.*, 16- cv-230, 2017 U.S. Dist. LEXIS 222380, *7 (E.D. Tex. Sep. 29, 2017) (denying plaintiff's motion in limine to the extent it seeks to exclude Defendant NetScout from referring to Packet Intelligence as a non-practicing entity or discussing Packet Intelligence's business model.)

**<u>NCR's Response to Motion in Limine 2</u>: DISPARAGING REMARKS OR ARGUMENTS IMPLYING THAT IT IS IMPROPER TO ASSERT PATENTS WITHOUT PRACTICING THEM**

Cloud of Change has argued that NCR should be precluded from making any disparaging remarks or arguments implying that it is improper to assert patents without practicing them. NCR has no intention to denigrate CloudofChange by asserting that CloudofChange does not produce anything or contribute to the economy. However, NCR should be allowed to establish that CloudofChange does not manufacture a product based on the asserted patents. *See, e.g. Intellectual Ventures II LLC v. FedEx Corp.*, Case No. 2:16-cv-00980, Dkt. 505, Order at 6-7 (E.D. Tex. April 26, 2018). The other cases cited by CloudofChange have nothing to do with limine motions. In *Summit Data Sys. v. EMC Corp.*, No. 10-749-GMS, 2014 WL 4955689, at *4 (D. Del. Sept. 25, 2014), the issue was whether it was proper to award attorneys' fees after the case had been voluntarily dismissed. And in *Helicos Biosciences v. Illumina, Inc.*, 858 F. Supp. 2d 367, 373 (D. Del. 2012), the issue was whether it was proper to transfer the case under 28 U.S.C. § 1404(a).

91610084v.1 1476756/00043

**NCR's Response to Motion in Limine 3: REFERENCES TO PRIOR LITIGATIONS INVOLVING CLOUDOFCHANGE WITNESSES**

CloudofChange has asked the Court to preclude reference to prior litigations involving CloudofChange witnesses, including, but not limited to, Wayne Baratta, Quentin Olson, Ambreen Salters, or Gregory Crouse. NCR will agree if CloudofChange is reciprocal to its witnesses.

**NCR's Response to Motion in Limine 4: REFERENCES TO NOTICE LETTERS SENT TO THIRD PARTIES OTHER THAN NCR**

CloudofChange has asked the Court to preclude any reference to twenty six (26) notice letters that it sent to third parties other than NCR, including, but not limited to, ShopKeep, Square, LivePOS, Revention, Comcash, Linga POS, Epos Now, Cin7, Clover Network, Lau, Toast, Ordyx, Oracle Corporation, Revel Systems, ECi Software Solutions, Upserve, Erply, Queztal POS, Harbortouch of Lighthouse Network, eHopper, Cegid, Franpos, e-Nabler, Kounta, COMBASE USA, and Vend, or any other argument, evidence, testimony, insinuation, or reference to CloudofChange's infringement investigations of parties or entities other than NCR, or whether they do or do not infringe the claims of the Asserted Patents.

These letters, and any responses thereto, relate only to the '640 patent and are referenced by NCR's damages expert, Devrim Ikizler, as one of the pieces of evidence one should consider under *Georgia Pacific* when determining a reasonable royalty, and are therefore relevant and admissible. Dr. Ikizler's market value approach estimates the market value of the claimed invention, and then apportions the aggregate market value among the number of alleged infringers (or the number of notice letters CloudofChange sent to companies alleging use of the invention). This approach to determining market share in the context of a market valuation to calculate patent damages is reliable and helpful to the jury, and it is consistent with modern literature on economic valuation of patent damages. *See* Expert Report of Dr. Devrim Ikizler, March 4, 2021 at ¶¶125-129 ("Report") (citing Spulber, Daniel F. "Finding Reasonable Royalty Damages: A Contract

4

Approach to Patent Infringement." U. Ill. L. Rev. (2019) at 6-7 (describing the market value approach as a reasonable economic analysis "because it relies on market information . . . [and] compensates the patent holder for the expected value of licensing royalties lost due to infringement. This method addresses evidence requirements because it uses observable market information and can be applied even when there are no comparable contracts."). Dr. Ikizler states in his Report at paragraph 125:

> Next, apportioning this value to ▇ licensees, the number of companies CoC sent notice letters (assuming equal market share),111 I estimated ▇▇▇ as the fair share of NCR for splitting the market value.112 The literature suggests that market share of each company should be considered when splitting the total market value of the invention to each licensee.113 Although I don't have access to the market shares, I understand that NCR's share is ▇▇▇▇▇▇, and ▇▇▇▇▇▇ is consistent with Keith Dunphy's estimate.

Dr. Ikizler uses the number of letters as a proxy for determining NCR's relevant market share because the number of potential infringers, which presumably derives from an analysis by CloudofChange and its lawyers of potential infringers, represents the potential market for licensing CloudofChange's patents. Accordingly, the number of notice letters CloudofChange sent to alleged infringers is relevant to determining a reasonable royalty based upon the market value approach.

NCR also wishes to use these letters, and any responses thereto, because they show how CloudofChange's infringement allegations were not reasonable. For example, CloudofChange sent a notice letter to Oracle accusing a POS system that had recently been acquired by Oracle without conducting an adequate investigation of that system. Shortly after being informed by Oracle that the accused POS system predated the '640 patent, CloudofChange promptly filed an

Information Disclosure Statement in the then-pending '012 patent disclosing the accused POS system to the PTO. CloudofChange received similar responses to many of the notice letters indicating that the '640 patent was invalid and not infringed. Accordingly, this evidence should be allowed.

**NCR's Response to Motion in Limine 5:** **REFERENCES TO NON-ELECTED PRIOR ART SHOULD BE PERMITTED FOR BACKGROUND INFORMATION**

NCR agrees not to argue that non-elected prior art invalidates the claims of the asserted patents. Non-elected prior art, however, is admissible to provide background information, to show the state of the art, and to show the knowledge of one skilled in the art.

To the extent NCR relies on unelected prior art references to provide background information relevant to the asserted patents, the state of the art, or establishing what one skilled in the art would have known at the time of the invention, NCR may discuss unelected prior art. *Papst Licensing,* 2018 WL 10126729, at *1 (E.D. Tex. Oct. 25, 2018); *see Transdata, Inc. v. Centerpoint Energy Houston Elec. LLC*, 6:10-cv-557-RWS-JDL, at *1 (E.D. Tex. July 1, 2016) (permitting reference to unelected prior art for "background purposes or to generally discuss the state of the art"); *Core Wireless*, 2016 WL 4718963, at *2 (E.D. Tex. July 12, 2016) ("[Defendant's] experts may discuss non-elected prior art when explaining the state of the art."). The cases cited by CloudofChange do not preclude the use of non-elected prior art for background purposes. *Core Wireless* expressly permits non-elected prior art "when explaining the state of the art." *Id. Metaswitch* and *Key Energy* relate to the use of non-elected prior art for proving invalidity rather than the state of the art or background. *See Metaswitch Networks Ltd. v. Genband* US LLC, No. 2:14-cv-744-JRG-RSP, 2014 WL 3618831, at *3 (E.D. Tex. Mar. 1, 2016); *Key Energy Servs., Inc. v. C.C. Forbes, LLC,* No. 2:08-cv-346-CE, 2011 WL 7429433, at *2 (E.D. Tex. June 3, 2011). NCR does not oppose a motion precluding non-elected prior art for the purposes of proving

invalidity. However, NCR should be able to rely on non-elected prior art for background purposes and to discuss state of the art.

**NCR's Response to Motion in Limine 6:** **NCR WILL NOT ARGUE INVALIDITY OR NON-INFRINGEMENT BASED ON A "PRACTICING THE PRIOR ART" DEFENSE**

NCR agrees not to argue invalidity or non-infringement based on comparing the prior art to the accused devices (i.e., practicing the prior art defense). However, NCR should be allowed to identify apparent contradictions or inconsistencies between CloudofChange's infringement and validity theories as a means of cross-examination or impeachment. *Saint Lawrence Commc. LLC v. ZTE Corp.*, 15-cv-349, 2017 WL 11517123, *1 (E.D. Tex. Mar. 2, 2017) ("Motorola may identify apparent contradictions or inconsistencies between SLC's infringement theories and SLC's validity theories as a means of cross-examination or impeachment."). Furthermore, NCR should be allowed to reference the prior art and the accused device for background information, such as the state of the art, and to explain features of the accused device. *Papst Licensing GMBH v. Samsung Elecs. Co.,* 18-cv-00388, 2018 WL 10126729, at *1 (E.D. Tex. Oct. 25, 2018) (permitting discussion of prior art for background and state of the art, and evidence about the embodiments of the patent to educate the jury about the patent). NCR should also be allowed to argue the axiom that "a product 'which would literally infringe if later in time anticipates if earlier.'" *Upsher-Smith Laboratories, Inc. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322 (Fed. Cir. 2005) (internal citations omitted); *accord Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889) ("That which infringes, if later, would anticipate, if earlier."). Accordingly, while CloudofChange's motion is overly broad and should be denied, NCR does not oppose a narrow motion precluding reliance on a "practicing the prior art" defense.

91610084v.1 1476756/00043

**NCR's Response to Motion in Limine 7:** REFERENCES TO FORUM SHOPPING, LITIGATION ABUSE, OR THE WESTERN DISTRICT OF TEXAS AS A POPULAR VENUE FOR PATENT LITIGATION OR AS AN IMPROPER VENUE

NCR agrees to this Limine motion.

**NCR's Response to Motion in Limine 8:** REFERENCES TO NCR'S 414 PATENTS SHOULD NOT BE EXCLUDED

NCR agrees to not argue that its patents constitute a defense to infringement of the asserted patents. However, NCR should be allowed to use its own patents to argue invalidity of the asserted patents and lack of willfulness. *See Advanced Technology Incubator, Inc. v. Sharp Corp.*, Civil Action No. 5:09-cv-135-DF-CMC, 2010 WL 11451797, * 2 (E.D. Tex. Mar. 31, 2010). NCR should also be allowed to use its own patents to demonstrate it is a cutting-edge technology company that highly values intellectual property and has a long history of innovations.

Moreover, NCR's patents were used by NCR's damages expert Dr. Ikizler, who performed a quantitative comparison of the asserted patents in relation to **all NCR patents that are "similar" to the asserted patents**. *See* Report at p. 28 (citing Shu-Hao, C., Hsin-Yuan, C., & Chin-Yuan, F. (2018). Structural model of patent quality applied to various countries. International Journal of Innovation Science, 10(3), 371-384. doi:http://dx.doi.org.ezproxy.lib.utexas.edu/10.1108/IJIS-05-2017-0036 (estimating such weights as 20.11 and 34.11 for number of claims and forward citations, respectively)).

Comparable analyses are widely accepted in the context of patent infringement cases, and forward citation analysis in the context of patent cases is widely recognized as sound economic analysis. *See generally Better Mouse Co., LLC v. Steelseries ApS, et al.*, Case No. 2:14-cv-198-RSP 2016 WL 3611528 (E.D. Tex. Jan. 4, 2016) at *2-3 (overruling motion to exclude Patent Citation Analysis); *Comcast Cable Comm. LLC v. Sprint Comm Co. L.P.*, 218 F.Supp.3d 375, 382-83 (E.D. Pa. 2016) (approving patent citation analysis and recognizing expressly that courts

8

have not rejected forward citation analysis). *Cf Finjan Inc. v. Blue Coat Syst., Inc.,* Case No. 13–cv–03999–BLF 2015 WL 4272870 (N.D. Cal. Jul. 14, 2015) at *8 (rejecting patent citation analysis because expert did not align it with the "facts of the case" while recognizing other courts have accepted patent forward citation analysis under different circumstances); *Oracle Am., Inc. v. Google, Inc.,* No. C 10–03561 WHA, 2012 WL 877125 (N.D. Cal. Mar. 15, 2012) at *2 (recognizing validity of Patent Citation Analysis but excluding portions of expert testimony that incorrectly implemented the methodology).

The purpose of this analysis is to estimate the relative value of the patents in suit in relation to NCR's portfolio of relevant patents. NCR's patent portfolio can be thought of as a combination of NCR's investments in their own innovation and acquisitions with the goal of extending their technological abilities. To create a list of "similar" patents, Dr. Ikizler first identified the CPC classifications used in the patents in suit, which include G06F8/34, G06Q30/06, G06F8/30, G06Q20/20, G06Q20/202, H 04L67/02, and then he identified all NCR patents with the relevant classifications. Next, Dr. Ikizler identified the POS-related patents within NCR's portfolio. Once he determined the relevant set of NCR patents for comparison, Dr. Ikizler then performed a comparative analysis among the asserted patents and the similar NCR patents using two measures that have been shown to be most positively correlated with a patent's value: (i) the number of forward citations, and (ii) the number of claims. In order to calculate the relevant value of the asserted patents with respect to NCR's patent portfolio, Dr. Ikizler totaled the relevant measures to get age-adjusted forward citations and the total number of claims of the asserted patents, and then he divided these quantities by the respective sum of all of NCR's patents. He then applied factor weights obtained from research literature to calculate a weighted relevant importance ratio, using relevant factor weights of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. These percentages yield a statistical

estimate as to how important the asserted patents are in terms of their contribution to the existing POS-related technology portfolio of NCR. According to Dr. Ikizler's estimation, the asserted patents' relative contribution to NCR's related patent portfolio would be ▮▮▮ for purposes of calculating a reasonable royalty in a hypothetical negotiation. Finally, Dr. Ikizler multiplies the mid-point of the apportionment range by NCR's ▮▮▮ gross profits between July 2016 and December 2020, to arrive at ▮▮▮.

A blanket prohibition of the use of NCR's patents is inappropriate. At a minimum NCR should be able to use its patent portfolio to show its history of innovation, and as part of its damages theories espoused by Dr. Ikizler.

**NCR's Response to Motion in Limine 9: EXCEL SPREADSHEET PREPARED BY NCR**

First, claiming the document is "irrelevant" to NCR's present case, CloudofChange seeks to preclude NCR from attempting to introduce into evidence or making reference to a certain NCR Excel spreadsheet (NCR006345) because the document was prepared by a summer intern and was supposedly not used by NCR in its business. Second, citing to Fed. R. Evid. 403, CloudofChange argues that even if it is relevant, NCR should not be allow to introduce this spreadsheet because it would only serve to confuse the jury by improperly providing "weighted factors" of different POS product features.

This spreadsheet contains a list of product features of NCR's Silver product as well as features from competitor's products. While Ms. Schoonover, NCR's corporate representative, did not know who originally assembled the product features chart, she testified that a summer intern applied the relative weights of importance to the overall features list. The document is clearly not hearsay and in any event NCR should be allowed to lay a foundation for its admissibility. CloudofChange's motion is nothing but a premature attack that should be reserved until trial.

**NCR's Response to Motion in Limine 10: REFERENCES TO ALLEGATIONS THAT INDIVIDUAL CLAIM ELEMENTS WERE IN THE PRIOR ART**

NCR will agree to not argue that individual claim elements being known in the art is sufficient to defeat the patentability of the combined subject matter as a whole. However, individual claim elements being known in the art is evidence of the state of the art and should be admissible. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) ("Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises. This evidence may be helpful to explain scientific principles, the meaning of technical terms, and terms of art that appear in the patent and prosecution history. Extrinsic evidence may demonstrate the state of the prior art at the time of the invention. It is useful 'to show what was then old, to distinguish what was new, and to aid the court in the construction of the patent.'".) *Id*. at 980, *citing Brown v. Piper*, 91 U.S. 37, 41, 23 L.Ed. 200 (1875).

**NCR's Response to Motion in Limine 11: DISPARAGING REMARKS ABOUT THE PTO**

CloudofChange claims that NCR should be precluded from making disparaging remarks regarding the quality of the PTO and its examiners, including that examiners are overworked or that the PTO is prone to error.

NCR has no intention of disparaging the Patent and Trademark Office ("PTO") or its Examiners, including arguments that the PTO is overburdened, incompetent, dysfunctional, or not diligent. NCR is permitted, however, to discuss PTO practices and procedures, and to argue the PTO made mistakes in granting the asserted patent. *See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.,* 14-cv-911, 2016 WL 4718963, at *2 (E.D. Tex. July 12, 2016) ("[Defendant] may offer evidence and argument that specific mistakes were made in connection with the prosecution of the asserted patents."). NCR is also permitted to present evidence that the PTO

11

makes mistakes and the jury must independently assess invalidity, including providing PTO workload and efficiency statistics. *Datatreasury Corp. v. Wells Fargo & Co.,* 06-cv-72, 2010 WL 11468934, at *4 (E.D. Tex. Oct. 5, 2010) ("…Defendants should be permitted to note . . . that the PTO may make mistakes and that the jury has an independent role in assessing validity. … Defendants may not argue or suggest that the PTO is "dysfunctional" or not diligent, but Defendants may submit PTO workload and efficiency statistics, may argue that the PTO may make mistakes, and may urge that the jury has an independent role in assessing validity.".) Indeed, information on the PTO's workload and efficiency is included in the Federal Judicial Center Video that has been widely used by courts within the Fifth Circuit and beyond. *See, e.g., id.* CloudofChange cannot use a motion in limine to perpetuate an argument that the PTO is infallible, and the jury must defer to the PTO's determinations on validity.  In sum, NCR does not oppose a motion prohibiting disparaging comments regarding the Patent Office and its Examiners. But, CloudofChange's motion is overly broad, and NCR should be permitted to discussed PTO practices and procedures.

**<u>NCR's Response to Motion in Limine 12:</u> REFERENCES TO EVIDENCE OR ARGUMENT THAT IS INCONSISTENT WITH THE COURT'S CLAIM CONSTRUCTIONS**

NCR agrees to this Limine motion.

**<u>NCR's Response to Motion in Limine 13:</u> REFERENCES TO A CHART PREPARED BY DEFENDANTS' TECHNICAL EXPERT CHATTERJEE**

CloudofChange seeks to prevent any testimony regarding a chart prepared by Dr. Sandeep Chatterjee, NCR's technical expert, because the chart was allegedly prepared and produced untimely. However, the chart prepared by Dr. Chatterjee was in direct response to a similar patent chart submitted by CloufofChange's technical expert Gregory Crouse on March 23, 2021 purporting to show that many of NCR's patents were not relevant to the accused product, NCR

12

Silver. Accordingly, NCR should not be barred from making any reference to or presenting any evidence, testimony, or opinions contained in the new chart because it was prepared as a direct result of CloudofChange's expert's untimely submission of his own patent chart. *See also* NCR's response to Motion in Limine 8 above.

**NCR's Response to Motion in Limine 14:** **REFERENCES TO CLOUDOFCHANGE'S ATTORNEY FEE AGREEMENTS**

NCR agrees to this Limine motion.

## CONCLUSION

For the reasons set forth above, NCR respectfully requests that the Court deny or limit the foregoing motions in limine as set forth herein.

91610084v.1 1476756/00043

Dated: April 7, 2021                                Respectfully submitted,

                                                    /s/ *Charles E. Phipps*
                                                    Charles E. Phipps
                                                       Texas State Bar No. 00794457
                                                       cphipps@lockelord.com
                                                    Charles S. Baker
                                                       Texas State Bar No. 01566200
                                                       cbaker@lockelord.com
                                                    Steven F. Meyer
                                                       Admitted *pro hac vice*
                                                       smeyer@lockelord.com
                                                    Donald E. Frechette
                                                       Admitted *pro hac vice*
                                                       donald.frechette@lockelord.com
                                                    Scarlett Collings
                                                       Texas State Bar No. 24001906
                                                       scarlett.collings@lockelord.com
                                                    Daniel G. Nguyen
                                                       Texas State Bar No. 24025560
                                                       dnguyen@lockelord.com
                                                    LOCKE LORD LLP
                                                    2200 Ross Avenue, Suite 2800
                                                    Dallas, Texas 75201
                                                    (214) 740-8000 Telephone
                                                    (214) 740-8800 Facsimile

                                                    **ATTORNEYS FOR DEFENDANT**
                                                    **NCR CORPORATION**

## CERTIFICATE OF SERVICE

   I hereby certify that on April 7, 2021, I caused the foregoing document to be filed with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all other counsel of record.

                                                    */s/ Charles E. Phipps*
                                                    Charles E. Phipps

91610084v.1 1476756/00043